JOHN R. WAGNER, District Attorney Grant County
You have directed my attention to sec. 343.305 (1), Stats., the implied consent law, which provides that a person who drives a motor vehicle upon the highway shall be deemed to have given his consent to a chemical test of his breath, blood, or urine for the purpose of determining the alcohol content of his blood under certain conditions. This section reads, in part:
 ". . . The law enforcement agency by which the officer is employed shall be prepared to administer 2 of the aforesaid 3 *Page 120 
tests an d may designate which of the aforesaid tests shall be administered . . . ."
You ask what is necessary to meet this requirement, and more specifically, whether each law enforcement agency must have its own equipment, or at least have such equipment available, within its own territorial jurisdiction.
There are approximately 1,900 cities, villages, towns, and counties in this state. See the 1970 Blue Book, p. 701. The records of the Division of Law Enforcement Services of the Wisconsin Department of Justice show that there are approximately 600 law enforcement agencies in this state.
In order to enforce the implied consent law, each of these must be prepared to administer two tests for blood alcohol content. The method by which they meet this requirement is as follows. The state owns 160 breathalyzer machines, and local units of government own 20, for a total of 180 such machines for the whole state. Of the state-owned machines, 32 are used as spares and for training. The remaining 128 machines are furnished free of charge to local units of government. They are usually placed with sheriffs' offices, of the 72 counties in this state, 71 have such machines. They are available to and are used by all law enforcement agencies in the county. Washburn County does not have such a machine. In that county, the only machine available is in the State Patrol headquarters at Spooner. This machine is available to and used by all law enforcement agencies within that county.
These machines presently cost $835. Each machine is accompanied by a companion instrument called a breath alcohol simulator. These presently cost $125. The Division of Motor Vehicles has trained 1,900 local police officers to operate these machines. Each of these people must be reexamined as to their qualifications every two years. The Division has eight technicians who are required to check each machine every 60 days. See sec. 343.305 (9) (b), Stats., and Wis. Adm. Code sections MVD 25.08 (1) (a), MVD 25.09, and MVD 25.10. To provide one such machine, with the necessary personnel, for each of the 600 law enforcement agencies in this state would greatly increase the financial burden of the taxpayers. In small localities, such a machine might rarely be used. This would not be economically feasible. *Page 121 
The method by which each law enforcement agency complies with the statutory requirement that it shall be prepared to administer two tests is by resort to the nearest and most convenient breathalyzer machine for the first test. These machines are usually located at the county seat. Any law enforcement agency in the county may bring a person, arrested for drunk driving, to the location of such machine where there will be on duty a trained breathalyzer operator to conduct the test. The law requires only that a law enforcement agency be prepared to administer the tests. Each of them is so prepared by the method above outlined. Nothing in the law requires that the only way to comply with this requirement is for each law enforcement agency to have such a machine available within its own territorial jurisdiction. This would be a near impossibility. The legislature could not have so intended.
For the second test, which must be made available, law enforcement agencies utilize either the urine test or the blood test. Urine specimen containers are furnished by the State Laboratory of Hygiene to all law enforcement agencies which request them. Most sheriffs' offices would have these available. The specimens are sent to that laboratory for analysis. Thus, the test is actually performed by that laboratory and not by the law enforcement agency. Section 343.305 (9) (a), Stats. Some sheriffs' offices and other law enforcement agencies utilize the blood test as the second test. Those agencies do not employ a medical technician to withdraw blood samples. Instead, they arrange with a local hospital or clinic for this service. Such samples are forwarded to the State Laboratory of Hygiene for analysis. Section 343.305 (9) (a), Stats. In respect to this test, neither the withdrawal of the sample, nor the analysis is actually performed by the law enforcement agency. Thus, the method by which law enforcement agencies comply with the requirement that they must be prepared to administer a second test is to make arrangements with others for obtaining the specimen and for its analysis. Nothing in the law requires that this must be done within the territorial jurisdiction of the particular agency.
It is, therefore, my opinion that a law enforcement agency, which makes available two tests in the manner outlined above, fully complies with the requirement of sec. 343.305 (1), Stats., that it shall be prepared to administer two of the three tests. *Page 122 
A further question arises whether this issue can be raised and litigated in the implied consent refusal hearing. The scope of such hearing is spelled out in sec. 343.305 (7) (c), Stats., as follows:
 ". . . The hearing shall be transcribed and shall be limited to the issues stated in sub. (2) (b) . . . ."
As set forth in sec. 343.305 (2) (b), Stats., those issues are the following: whether the person was under arrest at the time he was asked to submit to the test; whether he refused the test; whether he was informed of the consequences of refusal, and of his rights under subsecs. (4) and (5) (a) of sec. 343.305; and, whether his refusal was unreasonable. Since the issue as to whether the agency had two tests available is not included in this list, it is my opinion that such issue is not before the court in an implied consent refusal hearing.
RWW:AOH