STATE of Wisconsin, Plaintiff-Respondent,

v.

Dean W. GERALDSON, Defendant-Appellant.

Court of Appeals

*No. 92–2586. Submitted on briefs February 26, 1993.—Decided April 28, 1993.*

(Also reported in 500 N.W.2d 415.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Griesbach*, assistant district attorney, Manitowoc.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J.   Dean W. Geraldson appeals from an order revoking his operator's license pursuant

to Wisconsin's implied consent law, sec. 343.305, Stats. Geraldson contends that the arresting officer did not inform him of certain commercial motor vehicle provisions of the implied consent law. We agree. We reverse the revocation order.

## FACTS

The controlling facts are not disputed. On August 10, 1992, at approximately 1:03 a.m., Officer Scott Luchterhand of the City of Manitowoc Police Department arrested Geraldson for operating a motor vehicle while intoxicated (OWI). At this time, Geraldson's Wisconsin licensing privileges included authorization to operate a commercial motor vehicle. However, at the time of his arrest, Geraldson was operating a Volkswagen automobile, a noncommercial vehicle. Thus, Geraldson concedes that he was not operating under his commercial license privileges at the time of his arrest.

At the scene of the arrest, Geraldson provided Officer Luchterhand with his driver's license which revealed on its face that Geraldson was authorized to operate a commercial motor vehicle. Officer Luchterhand informed Geraldson of the implied consent warnings which apply to a motorist operating under a regular operator's license.[1] Officer Luchterhand also informed Geraldson that if he refused the test and was driving or on duty time with respect to a commercial

---

[1] Officer Luchterhand advised Geraldson of the following: (1) that he was deemed under the implied consent law to have consented to a chemical test; (2) that if he refused a test, his operating privilege would be revoked; (3) his right to an alternative test; and (4) the consequences of a chemical test producing a chemical test result of 0.10% or more.

motor vehicle, he would be issued an out-of-service order for twenty-four hours following the refusal. [2]

However, the implied consent law also requires that an OWI suspect be advised of the possible *consequences* if the test is taken and the suspect was operating or "on duty time" with respect to a commercial motor vehicle. *See* sec. 343.305(4), Stats.[3] Officer Luchterhand did not advise Geraldson of these addi-

---

[2] At the revocation hearing, Officer Luchterhand testified that he did not believe Geraldson was entitled to any commercial motor vehicle warnings because he was not operating a commercial motor vehicle at the time of the arrest. Officer Luchterhand used a standard form issued by the Wisconsin Department of Transportation when advising Geraldson. This form included the standard warnings applicable to all OWI suspects which we have set out in the preceding footnote. *See generally* sec. 343.305(4), Stats. This form also included the limited commercial motor vehicle warning that a refusal could result in a twenty-four hour out-of-service order. This explains why Officer Luchterhand delivered this portion of the commercial motor vehicle warnings despite his belief that Geraldson was not entitled to any commercial motor vehicle warnings. However, this portion of the form did not include the additional commercial motor vehicle warnings which are at issue in this case. The department no longer recommends the use of this form.

[3] Section 343.305(4), Stats., provides in relevant part:

INFORMATION. At the time a chemical test specimen is requested under sub.(3)(a) or (am), the person shall be orally informed by the law enforcement officer that:

. . . .

(c)  If one or more tests are taken and the results of any test indicate that the person:

. . . .

2.  Has an alcohol concentration of 0.04 or more and was driving or operating a commercial motor vehicle, the person will, upon conviction of such offense, be subject to penalties and disqualified from operating a commercial motor vehicle; and

tional warnings. Geraldson contends that this failure is fatal to the state's attempt to revoke his operating privileges in this case.

## ANALYSIS

### The Commercial Motor Vehicle Provisions of the Law

The OWI laws treat operators of commercial motor vehicles more strictly than operators of noncommercial vehicles. For instance, a commercial operator may not operate a commercial motor vehicle with a blood alcohol concentration (BAC) of 0.04% or more but less than 0.1%. Section 346.63(5)(a) & (6)(a), Stats. For noncommercial operators, the prohibited level is 0.1% or more. Section 340.01(46m)(a), Stats. In addition, sec. 346.63(7)(a), Stats., makes it illegal for a commercial operator to drive or be on duty time with respect to a motor vehicle: (1) with any measured alcohol concentration, (2) within four hours of consuming or being under the influence of an intoxicating beverage, or (3) while possessing an intoxicating beverage. No such prohibitions apply to noncommercial operators.

Recognizing that an OWI suspect may be a commercial operator, the legislature has decreed that these commercial vehicle sanctions must be included in the implied consent warnings which police officers are required to give to an OWI suspect. *See generally* sec. 343.305(4)(b) & (c), Stats. Thus, Geraldson makes a threshold argument that Officer Luchterhand was required to deliver the commercial motor vehicle warn-

---

3. Has any measured alcohol concentration above 0.0 and was driving or operating or on duty time with respect to a commercial motor vehicle, the person will be subject to penalties and issuance of an out-of-service order for the 24 hours following the refusal . . . .

491

ings of the implied consent law because he knew that Geraldson was licensed as a commercial operator.

## The Implied Consent Law

We begin by analyzing the statutory scheme of the implied consent law. By sec. 343.305(3)(a), Stats., the legislature has authorized a police officer to request an OWI suspect to provide a sample of breath, blood or urine for purposes of a chemical test. In subsec. (4), the legislature sets out those warnings and advice which the officer *must* deliver to the suspect before the officer may request the test. Section 343.305(4). These mandatory warnings include those applicable to commercial operators. The statute does not allow an officer to pick and choose which warnings to give.

## State v. Piskula

Despite the statute's mandatory terms, the case law has created one exception regarding the statute's commercial motor vehicle provisions. In *State v. Piskula*, 168 Wis. 2d 135, 483 N.W.2d 250 (Ct. App. 1992), the court of appeals held that the commercial motor vehicle warnings of the implied consent law need not be given to an OWI suspect who was not licensed as a commercial motor vehicle operator. The court said:

> Piskula was actually informed of all rights and penalties relating to him. He was not informed about the rights and penalties relating to drivers of commercial vehicles, but Piskula was not driving a commercial vehicle and he does not assert that he was driving or on duty time with respect to a commercial vehicle.

*Id.* at 140, 483 N.W.2d at 252.

The state argues that this case is governed by *Piskula* because Geraldson, like Piskula, was not operating a commercial motor vehicle. Geraldson counters that this case is not governed by *Piskula* because, unlike Piskula, he was licensed for commercial motor vehicle operation and Officer Luchterhand knew such to be the case.

We first look to the facts of *Piskula*. When arrested, Piskula was not licensed as a commercial operator. He produced a regular operator's license which did not carry any endorsement authorizing him to operate a commercial motor vehicle. Nor did Piskula assert to the arresting officer that he was a commercial operator. In short, the officer had no basis for suspecting or believing that Piskula might be a commercial operator. Nonetheless, Piskula argued that he was entitled to the commercial operator warnings of the implied consent law.

The court of appeals saw the illogic of this argument. The court looked to the reasonable objective of the implied consent statute: "With respect to noncommercial drivers, the reasonable objective of sec. 343.305(4) is to inform them of their rights and penalties regarding refusal and a blood alcohol concentration (BAC) of 0.10%." *Piskula*, 168 Wis. 2d at 140-41, 483 N.W.2d at 252. The court also said that an OWI suspect is entitled to be informed "of all the rights and penalties *relating to him.*" *See id.* at 140, 483 N.W.2d at 252 (emphasis added). The court reasoned that "[i]t would be unreasonable to require officers to inform persons who are clearly noncommercial drivers about the rights and penalties applicable only to commercial drivers." *Id.* at 141, 483 N.W.2d at 252. The court concluded that the officer had substantially com-

plied with the statute because, as a noncommercial operator, "Piskula was actually informed of all rights and penalties relating to him." *Id.* at 140, 483 N.W.2d at 252.

Thus, *Piskula* excuses an officer from delivering the statute's mandatory implied consent warnings where the officer has no basis for believing or suspecting that the operator is a commercial operator. That is not the case here. Geraldson provided Officer Luchterhand with an operator's license which specifically authorized Geraldson for commercial motor vehicle operation. In addition, the ensuing conversation between Geraldson and the officer revealed that Geraldson was a truck driver who was scheduled to report for work later that morning.

As we have already noted, the motor vehicle code creates separate OWI related offenses and penalties applicable to commercial operators who actually operate a commercial vehicle or who are "on duty time" with respect to such operation. The implied consent law requires that a commercial operator be warned of these possible consequences. Here, Geraldson was warned of the consequences against his commercial privileges if he refused the test. However, he was not warned of the consequences if he took the test.

*Piskula* holds that the reasonable objective of the implied consent law is to inform drivers of the rights and penalties *applicable to them*. The revocation order in this case revokes Geraldson's operating privileges for two years. This order is unqualified and all encompassing. It makes no distinction between Geraldson's regular and commercial operating privileges. We cannot accept the state's argument that Geraldson was not entitled to the commercial motor vehicle warnings of

the implied consent law where the officer knew that Geraldson was licensed as a commercial operator and where the ensuing revocation order revokes all operating privileges, including any commercial operating privilege. Under these facts, the implied consent law and *Piskula* lead to but one conclusion: Geraldson was entitled to the omitted commercial motor vehicle warnings.

■

Were we to rule otherwise, we would require police officers in each case such as this to make the difficult judgment call whether the OWI suspect was operating "on duty time" and to advise the suspect accordingly. In fact, one of Geraldson's alternative arguments is that Officer Luchterhand should have asked Geraldson additional questions in order to determine if he was "on duty time" once the officer learned that Geraldson was a commercial operator.[4] But, the statute does not require the officer to perform this exercise. Rather, as

---

[4] Section 340.01(15q), Stats., provides:

"On duty time" means, with respect to an operator of a commercial motor vehicle, the period from the time that the operator of the commercial motor vehicle begins to work or is required to be in readiness to work until the time that the operator of the commercial motor vehicle is relieved from work and all responsibility for performing work.

Wisconsin Adm. Code sec. **Trans. 327.01**(2), provides:

"On-duty time" means all the time from the time a driver begins to work until the time he or she is relieved from work and all responsibility for performing work. The term "on-duty" time shall include:
(a)   All time at a carrier or shipper plant, terminal, facility, or other property, or on any public property, waiting to be dispatched, unless the driver has been relieved from duty by the motor carrier;
(b)   All time inspecting equipment as required or otherwise inspecting, servicing, or conditioning any motor vehicle at any time;
(c)   All driving time as defined in sub. (1);

we have noted, the statute only requires that the officer give all the stated warnings. *Piskula* is the only exception and *Piskula* does not apply here.

We make a final observation and suggestion. The implied consent law has been the subject of frequent legislative changes which, in turn, have required law enforcement agencies to repeatedly alter their warning procedures and the attendant forms. In many instances, these warnings and forms have not required the officer to deliver *all* the warnings mandated by the statute. Instead, they have limited the warnings to only those which appear to apply to the individual suspect. As a result of this "selective warning" process, the question has been repeatedly raised in implied consent/revocation proceedings (both in the trial courts and on appeal) whether the suspect has been sufficiently informed.

Despite the court-made law which has permitted deviations from the implied consent law in certain situations, we think the safest and surest method is for law enforcement officers to advise OWI suspects of *all* warnings, whether or not they apply to the particular suspect, and to do so in the very words of the implied

---

(d) All time, other than driving time, in or upon any motor vehicle except time spent resting in a sleeper berth;

(e) All time loading or unloading a vehicle, supervising or assisting in the loading or unloading, attending a vehicle being loaded or unloaded, remaining in readiness to operate the vehicle, or in giving or receiving receipts for shipments loaded or unloaded;

(f) All time spent performing the driver requirements and relating to accidents;

(g) All time repairing, obtaining assistance, or remaining in attendance upon a disabled vehicle;

(h) All time performing any other work in the capacity of, or in the employ or service of, a common, contract or private motor carrier.

consent law. This suggestion is nothing more than what the statute requires on its face.

We do not pretend that the implied consent warnings are easily understood by suspects, police officers, lawyers or judges. But under the statutory scheme, the police officer's role is simply to recite the warnings. The officer is not required to interpret the warnings for the suspect or to decide which portions should or should not be delivered. If this suggestion were followed, the implied consent law could then work to its fullest and the flood of litigation in this area could be lessened.

*By the Court.*—Order reversed.