VILLAGE OF ELM GROVE, Plaintiff-Respondent,

v.

James W. LANDOWSKI, Defendant-Appellant. [Case No. 93–0901.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles ROBBINS, Defendant-Appellant. [Case No. 93–1365.]

Court of Appeals

*Nos. 93–0901, 93–1365. Submitted on briefs December 1, 1993.—Decided December 15, 1993.*

(Also reported in 510 N.W.2d 752.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Rex R. Anderegg* of *Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, Village of Elm Grove, the cause was submitted on the brief of *Paul E. Alexy*, of *de la Mora & de la Mora* of Elm Grove.

On behalf of the plaintiff-respondent, State of Wisconsin, the cause was submitted on the brief of *Phillip A. Koss*, district attorney for Walworth County, and *James P. Martin*, assistant district attorney.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   In these consolidated appeals we hold that the delivery of the commercial motor vehicle warnings of Wisconsin's implied consent law to a suspect who holds only a regular operator's license complies with the implied consent law and does not violate equal protection principles.

The facts in both appeals are straightforward. Each appellant, James W. Landowski and Charles Robbins (the operators), held a regular Wisconsin operator's license at the time of his arrest for operating a

140

motor vehicle while intoxicated (OWI). Before requesting the operators to submit to a chemical test, the arresting officers advised the operators of *all* the warnings required under the implied consent law, including those pertaining to commercial motor vehicle operation. *See generally* sec. 343.305(4), Stats. Landowski took the test. Robbins refused the test.

Landowski's case comes to us following the trial court's denial of his motion to suppress the chemical test result and his ensuing conviction for OWI.[1] Robbins' case comes to us following a refusal hearing and the trial court's ensuing revocation of Robbins' operator's license for illegally refusing the test.[2]

On appeal, the operators contend that the delivery of the commercial motor vehicle warnings of the implied consent law to a noncommercial operator violates the public policy and objectives underpinning the implied consent law. The operators also contend that such practice violates equal protection principles.

We reject the operators' arguments. Our affirmance of each trial court ruling is premised upon a simple and fundamental fact: each arresting officer followed the mandates of the implied consent law to the letter by advising the operators of all required warnings.

Section 343.305(4), Stats., sets out those warnings which the officer must give to an OWI suspect who is requested to submit to a chemical test. The statute is mandatory: "At the time a chemical test specimen is requested . . . the person *shall* be orally informed by the law enforcement officer. . . ." *Id*. (emphasis added). The

---

[1] Landowski's case was heard by the Honorable James R. Kieffer.

[2] Robbins' case was heard by the Honorable James L. Carlson.

statute then goes on to recite the necessary warnings. Some of these warnings pertain to commercial operators, some to noncommercial operators, and some to all operators. *Regardless, the statute requires the law enforcement officer to advise of all the statutory warnings regardless of the operator's status.*

Despite the statute's mandatory terms, the case law has created one exception regarding the statute's commercial motor vehicle provisions. In *State v. Piskula*, 168 Wis. 2d 135, 483 N.W.2d 250 (Ct. App. 1992), the officer failed to deliver the commercial motor vehicle warnings to a noncommercial operator. Based on this failure, the operator argued that the revocation of his operator's license for refusing the test was improper. The court of appeals disagreed, holding that the officer's warnings, although not in full compliance with the statute, constituted substantial compliance. *Id.* at 140-41, 483 N.W.2d at 252.

Implicit in the *Piskula* substantial compliance discussion is the premise that if the officer had fully complied with the statute, the suspect would have had no complaint. That is the very situation here. The operators do not dispute that the officers followed the implied consent law to the letter. Yet, they argue that such full compliance was fatal to the OWI prosecution in Landowski's case and the revocation proceedings in Robbins' case. The illogic of this argument is self-evident from its very recital. The officers could not possibly have violated the statute by following it.

Our recent decision in *State v. Geraldson*, 176 Wis. 2d 487, 500 N.W.2d 415 (Ct. App. 1993), is also relevant to this discussion. There, we held that the officer's failure to advise a commercial operator of the commercial

142

motor vehicle warnings was fatal even where the operator was not operating a commercial vehicle at the time of the arrest. *Id.* at 494-95, 500 N.W.2d at 418. In the course of our discussion we observed that repeated legislative changes to the implied consent law had resulted in law enforcement agencies adopting "selective warning" procedures rather than "full warning" procedures. As a result, oftentimes the officer decides in the particular case whether to deliver the commercial warnings, the noncommercial warnings or both. *See id.* at 496, 500 N.W.2d at 419. To avoid the pitfalls of this practice and in an effort to curtail the resultant litigation, we suggested in dicta:

> Despite the court-made law which has permitted deviations from the implied consent law in certain situations, we think the safest and surest method is for law enforcement officers to advise OWI suspects of *all* warnings, whether or not they apply to the particular suspect, and to do so in the very words of the implied consent law. This suggestion is nothing more than what the statute requires on its face.

*Id.* at 496-97, 500 N.W.2d at 419 (emphasis in original).

Although the arrests in these cases occurred before our decision in *Geraldson*, the arresting officers here performed in full accord with our suggestion. As such, our dicta in *Geraldson* becomes the controlling principle in these cases.

The operators also argue that the delivery of commercial motor vehicle warnings to a noncommercial driver creates confusion for the driver when called upon to make the important decision whether to submit to the chemical test. We acknowledged in *Geraldson* that the implied consent law is difficult to comprehend in certain respects:

We do not pretend that the implied consent warnings are easily understood by suspects, police officers, lawyers or judges. But under the statutory scheme, the police officer's role is simply to recite the warnings. The officer is not required to interpret the warnings for the suspect or to decide which portions should or should not be delivered.

*Id.* at 497, 500 N.W.2d at 419.

Despite these complexities, we do not agree that giving of commercial motor vehicle warnings to noncommercial operators creates confusion. These warnings simply advise an operator (whether commercial or noncommercial) that the implied consent law applies to both.

Thus we reject the operators' claims that the commercial vehicle warnings, standing alone, would lead a noncommercial operator astray when making a decision whether to submit to the test. Likewise, we conclude that giving such warnings to noncommercial operators does not thwart the purpose of the implied consent law which is "to obtain the blood alcohol content in order to obtain evidence to prosecute drunk drivers." *State v. Nordness*, 128 Wis. 2d 15, 33, 381 N.W.2d 300, 307 (1986).

The operators also contend that the giving of commercial motor vehicle warnings to noncommercial operators violates constitutional principles of equal protection. The operators premise this argument on their belief that many law enforcement agencies do not advise noncommercial OWI suspects of the commercial motor vehicle warnings. Since, in this case, the officers did advise the noncommercial operators of such warnings, the operators contend that they have been

unconstitutionally singled out for different treatment. We disagree for three reasons.

First, the operators did not raise this argument in the trial courts and therefore the issue is waived for purposes of appeal. *See Lenz Sales & Serv. v. Wilson Mut. Ins. Co.*, 175 Wis. 2d 249, 257, 499 N.W.2d 229, 232 (Ct. App. 1993).

Second, although we share the operators' suspicion that some law enforcement agencies choose not to deliver commercial motor vehicle warnings to noncommercial OWI suspects, the operators presented no evidence or other data confirming this suspicion.

Finally, even if the operators demonstrated that they fall into a differently treated class, such would not constitute an equal protection violation because the operators' classification here results from police action *which followed the law*. If other officers in other cases have not followed the implied consent law, it does not render the officers' compliance with the law in these cases a constitutional violation. By analogy to *Miranda*, we would not countenance an equal protection argument in a case where *Miranda* was followed simply because in other cases it was not.

*By the Court.*—Orders affirmed.