COUNTY OF OZAUKEE, Plaintiff-Respondent,

v.

Nancy L. QUELLE, Defendant-Appellant.†

Court of Appeals

*No. 95–1074. Submitted on briefs November 3, 1995.—Decided November 22, 1995.*

(Also reported in 542 N.W.2d 196.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert C. Raymond* and *Roxanne F. Felizmena* of *Raymond Law Offices* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Adam Y. Gerol*, assistant district attorney.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J.   Nancy L. Quelle pled no contest to a charge of operating her vehicle while intoxicated. She now argues that the trial court erred in denying her motion to suppress the results of her breath alcohol test because the arresting officer did not accurately or completely inform her about Wisconsin's implied consent law. She asserts she was subjectively confused by the officer's conduct. She argues that while a "subjective confusion" defense has not to this point been judicially recognized in Wisconsin, its viability was acknowledged by our supreme court in *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 524 N.W.2d 635 (1994). We conclude that the "subjective confusion" language in the decision is mere dicta and that the court did not intend to launch such a defense. Therefore, after reviewing existing case law, we hold that Quelle's test was valid.

We will briefly outline the facts with a more thorough accounting later. Quelle was brought to the station house after her arrest for driving while intoxicated. There, an officer read her the Informing the Accused form which consists of five paragraphs. Quelle also read each paragraph to herself and questioned the officer about each paragraph. At various points, the officer attempted to explain the paragraphs to her and, after roughly forty-five minutes of questions and answers, Quelle agreed to take the test. She did not pass.

In a pretrial motion, Quelle moved to suppress the breath test results. In the four months between her filing of the motion and the evidentiary hearing, our supreme court released the *Bryant* decision. There, ruling on three consolidated cases, the court found that Wisconsin's current Informing the Accused form is not contradictory or confusing on its face. *Id.* at 691-94, 524 N.W.2d at 639-40. However, the court wrote:

> We emphasize also that in none of the cases before us is there any claim on this review that the drivers were subjectively confused. We merely determine as a matter of law that the statutes are consistent and not contradictory, nor are the regulations interpreting them.

*Id.* at 693-94, 524 N.W.2d at 640; *see id.* at 686 n.3, 524 N.W.2d at 637. Based upon this passage, the testimony at the suppression hearing centered on whether Quelle became subjectively confused by the officer's attempts to explain the form to her. As voiced by her counsel, Quelle's contention before the trial court was that the "officer told her things which are in essence inconsistent with what the law is or is confusing." After the hearing, the trial court took the case under advisement

to review the *Bryant* case and eventually denied the motion to suppress. The trial court found that the officer's conduct was not contradictory or confusing. Quelle then pled no contest to the charge and brought this appeal.

Initially, we address the County's waiver claim. It cites established law that a plea of guilty, knowingly and understandingly made, constitutes a waiver of nonjurisdictional defenses, including claimed violations of constitutional rights. *County of Racine v. Smith,* 122 Wis. 2d 431, 434, 362 N.W.2d 439, 441 (Ct. App. 1984). Waiver also applies where the plea is one of no contest. *Id.* While the legislature has promulgated § 971.31(10), STATS., allowing defendants to appeal denials of motions to suppress notwithstanding a guilty or no contest plea, the statute only applies in criminal cases. *Smith,* 122 Wis. 2d at 435, 362 N.W.2d at 441. This is not a criminal case. While the County acknowledges that an appellate court may review nonjurisdictional errors in the exercise of its discretion, *id.* at 434, 362 N.W.2d at 441, it nonetheless contends that we should apply *Smith* and dismiss Quelle's claim.

We decide not to apply the waiver rule here for the following reasons. First, although a jury trial was scheduled, the no contest plea saved administrative costs and time. As we pointed out in *Smith,* it often improves the administration of justice to avoid an unnecessary and protracted trial when the sole issue is a review of a suppression motion. *See id.* at 437-38, 362 N.W.2d at 442. Second, since the issue raised on appeal was squarely presented before the trial court and testimony was taken regarding the issue, we have an adequate record. Third, this does not appear to be a

case where the defendant took a chance on a more lenient sentence and then brought this appeal when the sentence was more severe than hoped. All indications are that this was a garden-variety first offender driving while intoxicated case and the penalty assessed was no greater or lesser than usual. *Cf. State v. Holt,* 128 Wis. 2d 110, 124, 382 N.W.2d 679, 686 (Ct. App. 1985) (recognizing that litigants may not use appellate rights simply to remedy an unfavorable trial verdict). Fourth, there are no published cases applying the pertinent language in *Bryant.* We are mindful of the rule favoring repose when a defendant has pled guilty or no contest to a charge. *See Smith,* 122 Wis. 2d at 437, 362 N.W.2d at 442 ("He cannot be heard to complain of an act to which he deliberately consents.") (quoting *Agnew v. Baldwin,* 136 Wis. 263, 267, 116 N.W. 641, 643 (1908)). On balance, however, we will not apply the waiver rule here.

██

Turning to the merits, we first address what the statement about "subjective confusion" at the end of the *Bryant* case means. Pursuant to RULE 809.61, STATS., we originally certified this question to the supreme court. This request was denied. Therefore, we will give our opinion as to the significance of *Bryant*'s "subjective confusion" language. This and the other related issues Quelle raises are questions of law which we review de novo. *See State v. Hagaman,* 133 Wis. 2d 381, 384-85, 395 N.W.2d 617, 618 (Ct. App. 1986).

We first observe that the warnings provided drivers under the implied consent law are analogous to those employed in *Miranda*-type cases.[1] The *Miranda* warnings themselves are not confusing such that

---

[1] The supreme court expressed concern in *Village of Oregon v. Bryant,* 188 Wis. 2d 680, 692-93, 524 N.W.2d 635, 640 (1994),

understanding the warnings affects a person's uncon-strained will to confess to a crime. *See* 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE, § 6.9(b) (1984). The police, however, may create confu-sion for the accused by misstating the warnings or using other coercive and manipulative means to pro-cure information. *See, e.g., Barrera v. State,* 99 Wis. 2d 269, 291, 298 N.W.2d 820, 830 (1980), *cert. denied,* 451 U.S. 972 (1981). There are similar problems that may occur when police deliver the implied consent warnings.

■

Every driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content. Section 343.305(2), STATS. A person may revoke consent, how-ever, by simply refusing to take the test. *See* 343.305(9). Thus, a driver has a "right" not to take the chemical test (although there are certain risks and con-sequences inherent in this choice). The legislature

that recitation of the standard warnings may confuse drivers; however, it cautioned:

> We do not attempt to design such forms or to devise a "Miranda-like" card to guide the Department of Transportation law enforce-ment officers to inform an accused. But the department should do so.

While this dictum supports our *Miranda* analogy, it also sug-gests who should be the source of such warnings. The *Miranda* card is premised on "judge-made regulations for implementing or securing constitutional commands." 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE, § 6.5(e) (1984) (quoted source omitted). The Informing the Accused form, however, is grounded upon a legislative conclusion. *See* § 343.305(4), STATS. Thus, an accused driver's rights under the implied consent law are primarily statutory. *See Bryant,* 188 Wis. 2d at 692, 524 N.W.2d at 640 ("[S]tatutory protections and admonitions were afforded each of the defendants . . . ."); *cf.* § 343.305(3)(c).

recognized that drivers being asked to take a chemical test should be informed of this choice and therefore requires law enforcement officers to provide drivers with certain information. Section 343.305(4). We conclude that there is a *functional* similarity between this political conclusion and the Supreme Court's command in *Miranda v. Arizona,* 384 U.S. 436, 467 (1966), that criminal suspects need to be informed of certain constitutional rights.

These observations about the implied consent law, nevertheless, must be reconciled with a line of our earlier decisions that addressed alleged deficiencies in the officer's delivery of the warnings. These cases support the conclusion that an accused driver must make two showings when challenging an officer's conduct: one, that the officer misstated the warnings, or otherwise misinformed the driver, and two, that the officer's misconduct impacted his or her ability to make the choice available under the law.

Most notably, in *State v. Geraldson,* 176 Wis. 2d 487, 500 N.W.2d 415 (Ct. App. 1993), we faced a driver who had his license revoked after refusing the chemical test. Although he was driving a Volkswagen at the time of the stop, he also possessed a valid commercial license. The officer, however, failed to read him all of the additional warnings that must be given to commercial drivers. *Compare* § 343.305(4), STATS., *with* § 343.305(4m). As a result, the driver was not fully informed of the respective consequences to his standard and commercial driving privileges. *See Geraldson,* 176 Wis. 2d at 488-91, 500 N.W.2d at 416-17.

Because the driver was not given all of the information he was entitled to, we held that the state could

not revoke his operating privileges. *See id* at 494-95, 500 N.W.2d at 418. In arriving at this conclusion, we distinguished *State v. Piskula*, 168 Wis. 2d 135, 140-41, 483 N.W.2d 250, 252 (Ct. App. 1992), where we held that the failure to read the commercial warnings to a standard license holder was not a fatal error. We reasoned that these cases were founded on a simple premise: the implied consent warnings are designed to inform drivers of the rights and penalties applicable to them. *See Geraldson*, 176 Wis. 2d at 494, 500 N.W.2d at 418. Thus, in *Piskula* there was no error because the driver did not need to know what effects there could be to a commercial license that he did not have. But in *Geraldson*, the driver did have a commercial license; thus, he needed to know how a violation under his standard license could affect his commercial privileges.

In addition to the *Geraldson* line of cases, we believe that the analysis within *State v. Sutton*, 177 Wis. 2d 709, 503 N.W.2d 326 (Ct. App. 1993), must be considered in our assessment of the supreme court's "subjective confusion" language. There the driver claimed that the police overstated the penalties associated with a refusal to take the chemical test. They told him that he would not only have his privileges revoked, but could also face a jail penalty. *See id.* at 712, 503 N.W.2d at 327.

Although the police had misinformed the driver, we nonetheless held that the revocation order was valid because there was no prejudicial effect on the driver. *Id.* at 715, 503 N.W.2d at 328. Even though the driver was led to believe that the effects from refusing the test were far greater than they actually were, he still believed that this avenue was a better choice than taking the test. *See id.*

Although a reasonable person could read the *Bryant* court's use of the term "subjective confusion" to mean that the implied consent law may require assessing the *driver's perception* of the information delivered to him or her, the statutory framework and above case law demonstrate otherwise. Indeed, the *Geraldson* and *Sutton* decisions together yield a stringent three-part standard that is applied to assess the adequacy of warning process under the implied consent law:

> (1) Has the law enforcement officer not met, or exceeded his or her duty under §§ 343.305(4) and 343.305(4m) to provide information to the accused driver;
>
> (2) Is the lack or oversupply of information misleading; *and*
>
> (3) Has the failure to properly inform the driver affected his or her ability to make the choice about chemical testing?

We therefore conclude that the "subjective confusion" language within *Bryant* was nothing more than an observation that such a claim was not made in those cases. It did not recognize "subjective confusion" as a defense or acknowledge the viability of such a defense. We decline to recognize it as a defense. Instead, the only recognized defense is that which we have set forth.

In reaching this conclusion, we reject Quelle's claim that the Bryant language suggests how an officer has a duty to "explain" and not merely read the information form, thereby reducing the chance that an accused driver would be "subjectively confused" by the warnings.[2] We acknowledge that the *Bryant* decision

---

[2] Quelle specifically described in her briefs that:

revealed some concern over how drivers may be confused by the information on the form. *See Bryant*, 188 Wis. 2d at 692, 524 N.W.2d at 640. But the court did not intend to create a new defense of "subjective confusion," nor did it in any way suggest that officers should be required to provide a "reasonable explanation" of the law to any driver who remains confused after being given the standard warnings.

As we described above, we find that the legislature has adequately addressed any risk of confusion by imposing a statutory duty on the police to provide accused drivers with specific information. Moreover, we see nothing in *Bryant* suggesting that the *Geraldson* or *Sutton* decisions are no longer the law. Assigning any weight to the "subjective confusion" label chosen by the supreme court would contradict the legislature's conclusion that the oral delivery of information through § 343.305(4) & (4m), STATS., provides appropriate protection for the accused drunk driver. Finally, we note that judicial enactment of such a duty would open a Pandora's box. The decision of whether the officer should have aided the confused driver could be litigated *in absurdum*.[3] We do not believe the supreme court intended such a result and hold to the three-part standard outlined above.

With the above standard in hand, we now turn to Quelle's specific challenges regarding the information that was delivered to her as the officer attempted to

---

because the issue of subjective confusion was left open in *Bryant*, an accused's subjective confusion may be caused by an officer providing incorrect information or by failing to provide a "reasonable" explanation to the accused's inquiries.

[3] In *Bryant*, the supreme court suggested that a goal of the implied consent law should be to "obviate unnecessary litigation." *See Bryant*, 188 Wis. 2d at 693, 524 N.W.2d at 640.

explain the meaning of the form. At the onset, we acknowledge that our review of the record establishes how Quelle meets the first prong of our standard. She has presented undisputed evidence showing that the officer went beyond his statutory duty of reading the information on the face of the form. Still, under the second prong of the test, we need to examine the specific facts and determine if this additional information was false or otherwise misleading.

Quelle consented to a preliminary breath test while still in the field. When later brought to the station house, the officer read her the Informing the Accused form. Paragraphs 1 and 2 inform the driver that he or she is presumed to have consented to chemical testing and that refusal will result in a loss of driving privileges.[4] Here, Quelle argues that the officer's explanation of these passages confused her. Since she already had consented to a Preliminary Breath Screening Test in the field, she did not understand how she now could refuse additional testing.[5] Quelle asserts that the officer caused this confusion by "continuing to insist that she could refuse 'the test'

---

[4] The form read to Quelle provided:

1. You are deemed under Wisconsin's Implied Consent Law to have consented to chemical testing of your breath, blood or urine at this Law Enforcement Agency's expense. The purpose of testing is to determine the presence or quantity of alcohol or other drugs in your blood or breath.

2. If you refuse to submit to any such tests, your operating privilege will be revoked.

[5] The implied consent law draws a distinction between these tests. Under § 343.303, STATS., an officer may request a Preliminary Breath Screening Test prior to arrest. However, the legislature has concluded that drivers need not be informed of this distinction. *See* § 343.305(4).

when it was blatantly apparent that she did not think refusal was possible."

This argument is unfounded. As we have repeatedly explained, law enforcement's duty under the implied consent law is to accurately deliver information to the accused. The officer's insistence that Quelle could refuse the station house test was a proper statement of the law. Her state of confusion stems from an inability to digest and interpret the words and phrases of the form. Under *Bryant*, however, this combination of words and phrases is not confusing. *See Bryant*, 188 Wis. 2d at 693-94, 524 N.W.2d at 640. The officer's correct explanation of the law, therefore, cannot be grounds for suppressing the test results.

Quelle's next complaint pertains to her understanding of the type of test that would be administered. The driver may ask the police to perform another test different from that normally given by that agency, e.g., a blood test in addition to a breath test. After the officer read this section of the form to Quelle, she did not understand it and thus asked to read it herself.[6]

She previously had asked the officer what tests would be administered. He told her that she would only be getting a breath test. But after reading the form, she did not understand that she was entitled to other tests. Although she did ask what type of tests she would be getting, she did not make any request that the police administer another type.

---

[6] The relevant paragraph of the form read to Quelle provides:

> 3.  After submitting to chemical testing you may request the alternative test that this law enforcement agency is prepared to administer at its expense or you may request a reasonable opportunity to have any qualified person of your choice administer a chemical test at your expense.

Quelle asserts that her decision not to take another test resulted only from the officer's failure "to provide a reasonable explanation regarding that option." She does not, however, present any evidence that the officer told her she could not exercise this option. Although he indicated that the police would only be giving a breath test, this was a correct statement of law enforcement's option under the implied consent law. Here, Quelle is only rekindling the argument that an officer is under a duty to provide a "reasonable explanation" to a confused driver. But as we have emphasized, an officer only has a duty to provide the information on the form. Thus, Quelle's argument fails because her confusion arose out of an inability to interpret the form, not improper conduct by this officer.

Finally, Quelle argues that she was misinformed of her ability to seek a separate chemical test administered by a party of her choice. Again, the officer read the relevant section to Quelle and she read the form herself. Nonetheless, she became confused over her right to a "reasonable opportunity" to obtain a third-party test. She apparently asked the officer what this term meant and he responded that it was "determined by a judge." Quelle adds that by this time the officer was becoming impatient and warned that if she continued to have questions, she would have to "wait behind bars" while he attended to other pressing duties. Her position is summarized as follows:

> [Quelle] did not understand the provisions of paragraph 3 which informed her of her right to a second chemical test. She discontinued asking questions about paragraph 3, even though she was still confused, because, if she did not cease, she was faced with the daunting prospect of being put behind

bars, a threat made by [the officer] because he was tired of answering her questions.

█

There are two flaws in this argument. Primarily, as required under the second prong, she fails to provide evidence that the officer gave her false information.[7] Secondly, her argument again is premised on a position that the officer had a duty to answer her questions and that he was becoming aggravated because she was making it difficult to perform this duty. However, as we have repeatedly stated, an officer's only duty under the implied consent law is to accurately deliver the information to the driver; an officer need not explain all of the choices (and resulting consequences) embodied within these statutes.

In general, Quelle characterizes herself as "an intelligent and inquisitive person . . . [who] took the time to read the applicable portion of the Form to herself in order to help her understand the provisions . . . ." The officer, however, did not stop her from following her instincts. Thus, her confusion over the rights provided under the implied consent law arose out of her inability to understand the form, not the officer's breach of duty.

█

Applied to the framework set out above, Quelle has satisfied the first prong by showing that the officer provided her with information beyond that required under the applicable law. She has not, however, met the second prong and demonstrated that this informa-

---

[7] As Quelle conceded in her argument to the trial court, the officer's statement regarding the definition of "reasonable opportunity" was correct to the extent that courts provide the interpretation to any statute.

tion was inaccurate or misleading. Therefore her claim fails.

*By the Court.*—Judgment affirmed.