COURT OF APPEALS
DECISION
DATED AND FILED

September 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2021AP1543
2022AP307**

Cir. Ct. No.  2019TR632

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE REFUSAL OF SAMUEL G. SHARPE:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SAMUEL G. SHARPE,

DEFENDANT-RESPONDENT.

APPEALS from a judgment and orders of the circuit court for St. Croix County:  SCOTT R. NEEDHAM, Judge.  *Affirmed*.

¶1     STARK, P.J.[1] The circuit court entered a judgment revoking Samuel G. Sharpe's operating privilege for a period of one year after the court found that Sharpe improperly refused to submit to a chemical test of his breath following his arrest for operating a motor vehicle while intoxicated (OWI). The judgment also required Sharpe to install an ignition interlock device (IID) in his vehicle for a period of one year.

¶2     Sharpe appeals the circuit court's judgment, arguing the court erred by determining that his refusal of the breath test was improper. Sharpe also appeals an order denying his motion for reconsideration regarding that issue. In addition, Sharpe appeals an order that denied his motion to remove the IID requirement from the judgment, on the grounds that WIS. STAT. § 343.301—the statute governing the installation of IIDs—is unconstitutional under the dormant Commerce Clause. We reject Sharpe's arguments and affirm the judgment and orders.

## BACKGROUND

¶3     On February 16, 2019, Sharpe was arrested for OWI. He was also issued a "Notice of Intent to Revoke Operating Privilege" based on his refusal to submit to an evidentiary chemical breath test following his arrest. He timely requested a refusal hearing, which took place in February 2021.

¶4     During the refusal hearing, the circuit court heard testimony from both Sharpe and the arresting officer, Sergeant Chase DuRand of the St. Croix

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

County Sheriff's Office.  Additionally, portions of DuRand's body camera video were played for the court.  A copy of the "Informing the Accused" form (ITAF) was also admitted into evidence.  The following facts are taken from the evidence introduced at the refusal hearing and do not appear to be disputed, at least for purposes of these appeals.[2]

¶5      Following Sharpe's arrest, DuRand contacted dispatch, which advised him that Sharpe's most recent OWI offense had occurred in 2004.  DuRand also learned that Sharpe had a prior implied consent violation from 2004.  DuRand consulted with Deputy Mitchell Schaeppi, who was also at the scene.  Schaeppi advised DuRand that an implied consent violation is not a countable conviction under WIS. STAT. § 343.307.  DuRand contacted dispatch a second time

---

[2] The appellate records include two DVDs—Record Items 126 and 127—each purportedly containing portions of DuRand's body camera video.  It is not entirely clear which of these DVDs was entered into evidence and played during the refusal hearing.

In his brief-in-chief, Sharpe cites exclusively to Record Item 127, which contains three video files.  Only two of those files, however, can be played on this court's computers.  In addition, the refusal hearing transcript shows that during that hearing, the defense played portions of files ending in 08-52-15, 08-54-42, 09-03-53, and 09-08-10.  Record Item 127 contains only one of those files—the file ending in 09-08-10.  Furthermore, while Sharpe's citations to the body camera video in his brief-in-chief cite Record Item 127 and refer to specific time stamps, he does not identify the particular video file or files that he intended to cite.

Record Item 126, in turn, arrived to this court damaged.  During the preparation of the appellate records, a staple was apparently inserted through the edge of the disc.  As a result, we are unable to access or play any files that may be present on Record Item 126.  Consequently, we cannot discern whether the time stamps provided in Sharpe's brief-in-chief correspond to events shown on any video files that Record Item 126 may contain.

Despite these deficiencies in the appellate records, the State does not appear to dispute any of Sharpe's assertions regarding the events depicted in DuRand's body camera video.  We therefore accept Sharpe's representations regarding the video's contents as true for purposes of these appeals.  We also rely, in part, on a partial "transcript" of the body camera video that was apparently prepared by the defense and introduced during the refusal hearing as a "demonstrative" exhibit.

for further clarification regarding Sharpe's driving record, but dispatch was unable to provide any additional information.

¶6     Schaeppi then asked Sharpe directly whether he had ever been arrested for an OWI-related offense.  Sharpe responded, "Maybe a long time ago."  When Schaeppi asked Sharpe whether he had been arrested and convicted for an OWI-related offense in 2003 or 2004, Sharpe replied, "Yes, I was.…  I think so if I remember correct.  It was a long time ago."  DuRand and Schaeppi ultimately concluded that because it had been more than ten years since Sharpe's last OWI-related conviction, Sharpe's OWI in this case would be counted as a first offense.  Schaeppi then relayed that information to Sharpe.

¶7     Thereafter, DuRand read Sharpe the ITAF and asked him to submit to an evidentiary chemical breath test.  Sharpe refused.  DuRand testified that he requested a breath test, rather than a blood test, because the St. Croix County Sheriff's Office has a policy of requesting blood tests for second and subsequent OWI offenses only.

¶8     Sharpe testified that before his arrest in this case, he had been through the court process for an "impaired driving incident" on two occasions.  He was aware at the time of his arrest that "the more impaired driving offenses you get, the more severe the penalties get."

¶9     Sharpe further testified that before DuRand read him the ITAF, one of the officers told him that he "was being charged with OWI first."  Sharpe testified that the "misinformation that this would be treated as a first offense" affected his decision to refuse the requested breath test because "[he] knew the penalties for a first [offense] were less."  He explained, "I didn't want the officer

to have more evidence against me, so I decided to take my chances and not submit to further testing." Stated differently, Sharpe asserted that he could "stomach" the lesser penalties for a first-offense OWI, regardless of whether he submitted to or refused the breath test, but he "definitely would have considered" taking the test if the officers had told him that he would be charged with third-offense OWI, or if they had simply not affirmatively told him that he would be charged with a first offense.

¶10 On cross-examination, Sharpe conceded that the officers' misinformation was only "one of the reasons" that he refused the breath test. He testified that he also refused the test because he was scared and confused. On redirect examination, however, Sharpe asserted that the misinformation was the "[b]iggest factor" in his decision to refuse the test.

¶11 In a written decision, the circuit court concluded that Sharpe's refusal was improper, after applying the three-prong test set forth in *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated in part by Washburn County v. Smith*, 2008 WI 23, ¶64, 308 Wis. 2d 65, 746 N.W.2d 243. Specifically, the court concluded that Sharpe had failed to satisfy the third prong of the *Quelle* test because he had not proven, by a preponderance of the evidence, that the erroneous information provided by the officers "contributed to his decision to refuse chemical testing." The court explained:

> [Sharpe's] self-serving testimony at the refusal hearing that he "definitely would have considered" submitting to a blood test was unconvincing and hardly dispositive of the issue. The confusion by DuRand about Sharpe's driving record had little or no bearing on his decision to submit to the breath test. It is purely speculative that, had a blood test been offered, Sharpe would have jumped at the chance and

5

> submitted to it. Sharpe was certainly in a position to know his driving history. To suggest that had the deputy requested blood for a[n] alleged third offense[,] [it] would have resulted in consent is incredible. Per the [ITAF] and per Wisconsin law, DuRand chose breath as the option for testing. Although the Sheriff's Department policy may have been to request blood for a suspected third offense, the deputy made a choice and Sharpe refused. Pure speculation is not synonymous with a preponderance of the evidence, which is the applicable burden of proof that Sharpe must carry.

¶12 Sharpe subsequently moved for reconsideration. He argued that the circuit court had erred because "[n]either counsel nor Mr. Sharpe complains that he was offered breath rather than blood. In fact, Mr. Sharpe never testified, and the [d]efense never argued, that the police's decision to seek breath rather than blood played into that decision." The court denied Sharpe's motion for reconsideration, stating it "st[ood] by its prior reasoning" that Sharpe had failed to satisfy the third prong of the *Quelle* test.

¶13 As a result of its determination that Sharpe had improperly refused a chemical breath test, the circuit court revoked Sharpe's operating privilege for a period of one year. *See* WIS. STAT. § 343.305(10)(a), (b)2. The court also required Sharpe to install an IID in his vehicle for one year, pursuant to WIS. STAT. § 343.301(1g)(a)1.

¶14 Sharpe subsequently moved to remove the IID requirement from the circuit court's judgment. He contended that the IID statute, WIS. STAT. § 343.301, is unconstitutional under the dormant Commerce Clause—both facially and as applied to him—because it discriminates against out-of-state drivers.

¶15 The circuit court denied Sharpe's motion to remove the IID requirement. Addressing Sharpe's facial challenge, the court reasoned that Sharpe

6

had not shown that WIS. STAT. § 343.301 is unconstitutional beyond a reasonable doubt because the relevant provisions of the statute "are the same for both Wisconsin residents and out-of-state residents such as Sharpe." The court also rejected Sharpe's as-applied challenge to § 343.301, reasoning that Sharpe had failed to show "that the IID restriction on his operating privileges in Wisconsin ordered by the [c]ourt has had any effect on his Minnesota driver's license" or that "the IID restriction[] required under … § 343.301 has had any effect on his ability to operate a motor vehicle in Wisconsin."

¶16    Sharpe now appeals, arguing that: (1) the circuit court erred by concluding that his refusal of the breath test was improper; and (2) the court erred by denying his motion to remove the IID requirement.

## DISCUSSION

### I. Sharpe's refusal

¶17    When a law enforcement officer arrests a person for an OWI-related offense, the officer may seek to obtain a sample of the person's blood, breath, or urine for chemical testing. WIS. STAT. § 343.305(3)(a). If the person refuses to consent to the requested test, and if a court subsequently determines that the refusal was improper, the court "shall revoke the person's operating privilege." *See* § 343.305(10)(a), (b)1.

¶18    "A refusal to submit to a chemical test for intoxication cannot result in revocation of operating privileges unless the person has first been adequately informed of his [or her] rights under the law." *Smith*, 308 Wis. 2d 65, ¶51. To that end, when requesting a chemical test from a person, an officer must read the person the information set forth in WIS. STAT. § 343.305(4). *See Smith*,

7

308 Wis. 2d 65, ¶52. The ITAF "accurately states the information that … § 343.305(4)" requires an officer to provide to a person when requesting a chemical test. *Smith*, 308 Wis. 2d 65, ¶77.

¶19 In this case, it is undisputed that DuRand read the ITAF to Sharpe before requesting a chemical test of his breath. Sharpe argues, however, that his refusal was not improper because DuRand and Schaeppi provided additional information, beyond that required by WIS. STAT. § 343.305(4). To obtain relief on this basis under the three-prong test set forth in *Quelle*, Sharpe must show that: (1) the officers exceeded their duty under § 343.305(4) to provide information to him; (2) the oversupply of information was misleading; and (3) the officers' failure to properly inform him affected his ability to make a choice about chemical testing. *See Quelle*, 198 Wis. 2d at 280.

¶20 Here, the State concedes that Sharpe has satisfied the first two prongs of the *Quelle* test. The State asserts, however, that the circuit court properly determined that Sharpe failed to meet his burden of proof on the third prong. When an officer provides erroneous information in addition to the information set forth in WIS. STAT. § 343.305(4), "it is the defendant's burden to prove by a preponderance of the evidence that the erroneous additional information in fact caused the defendant to refuse to submit to chemical testing." *Smith*, 308 Wis. 2d 65, ¶70 (citing *State v. Ludwigson*, 212 Wis. 2d 871, 873, 569 N.W.2d 762 (Ct. App. 1997)). The circuit court, "acting as the trier of fact, assesses the credibility of the two sides and determines as a matter of fact whether the erroneous extra information caused the defendant to refuse to take the test." *Ludwigson*, 212 Wis. 2d at 876.

¶21    In this case, the circuit court found that Sharpe's "self-serving testimony at the refusal hearing that he 'definitely would have considered' submitting to a blood test was unconvincing."  "When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."  *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.  "The reason for this rule is that the trier of fact had the opportunity to observe the witnesses and their demeanor."  *Id.*  Accordingly, we apply a deferential, "clearly erroneous" standard of review to a circuit court's credibility determinations.  *State v. Jenkins*, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24.

¶22    The circuit court's finding that Sharpe's "self-serving testimony" at the refusal hearing was "unconvincing"—i.e., incredible—is not clearly erroneous. Sharpe testified that he would have considered submitting to a test if the officers had told him that he would be charged with third-offense OWI or had not affirmatively stated that he would be charged with first-offense OWI.  He asserted that he "knew the penalties for a first [offense] were less" and he "didn't want the officer to have more evidence against [him], so [he] decided to take [his] chances and not submit to further testing."  In other words, Sharpe made a strategic decision not to submit to a chemical breath test because he believed that doing so would deprive the State of evidence that it could use to obtain a conviction for OWI.

¶23    That rationale, however, is equally applicable regardless of whether Sharpe was charged with OWI as a first or third offense.  In fact, it would be reasonable to conclude that Sharpe's motivation to refuse the test would have been greater if he had known that he would be charged with third-offense OWI, given

9

his testimony that he knew the penalties for a third offense are greater than those for a first offense. Stated differently, if Sharpe had been aware that he was being charged with an OWI offense carrying greater penalties, he would have had more incentive—not less—to "take [his] chances" and deprive the State of evidence that might support his conviction.

¶24 Moreover, the misinformation that the officers provided to Sharpe occurred before DuRand read him the ITAF. After hearing the information contained in the ITAF, Sharpe did not ask the officers any questions regarding the ITAF, its contents, the potential penalties for refusing a requested test, or the potential penalties for an OWI offense. Instead, Sharpe immediately refused to submit to the requested test, asserting that he "wasn't driving" and "had no intentions of driving." These facts further support a determination that the officers' misinformation about the charged offense did not contribute to Sharpe's decision to refuse the requested test. In particular, given Sharpe's stated defense that he was not driving, the results of a breath test would have been of limited importance.

¶25 Sharpe cites *State v. Sutton*, 177 Wis. 2d 709, 714-15, 503 N.W.2d 326 (Ct. App. 1993), where this court stated that "to obtain substantial compliance [with WIS. STAT. § 343.305(4)], the officer must not understate the penalties for either refusal to take the test or taking the test and obtaining an inappropriate test result." Here, however, there is no evidence that either DuRand or Schaeppi understated the applicable penalties. They merely informed Sharpe—incorrectly—that his OWI would be charged as a first offense. Sharpe testified that he was aware that the penalties for a first-offense OWI are less than the penalties for subsequent OWI offenses. That awareness—based on information

obtained from sources other than *DuRand* and *Schaeppi*—does not support a conclusion that *DuRand or Schaeppi* understated the penalties for Sharpe's OWI offense.

¶26 In his reply brief, Sharpe notes that in *Ludwigson*, we stated that "the party claiming that the refusal was proper has the burden of production to present the trier of fact with enough evidence to make a prima facie showing of a causal connection between the misleading statements and the refusal to submit to chemical testing." *See Ludwigson*, 212 Wis. 2d at 876. "Once the prima facie evidence has been submitted, the burden shifts to the State to prove otherwise." *Id.* Sharpe asserts that by virtue of his own testimony at the refusal hearing, he made a prima facie showing that the officers' misinformation contributed to his decision to refuse the requested test. He then suggests that, because the State offered "no evidence to the contrary," it failed to meet its burden to rebut his prima facie case.

¶27 This argument fails because the circuit court expressly found Sharpe's "self-serving" testimony at the refusal hearing to be "unconvincing"— that is, incredible. As such, the court implicitly determined that Sharpe had failed to make a prima facie showing of a causal connection between the officers' misinformation and his refusal to submit to chemical testing.

¶28 In any event, as noted above, "[a]t the end, the [circuit court], acting as the trier of fact, assesses the credibility of the two sides and determines as a matter of fact whether the erroneous extra information caused the defendant to refuse to take the test." *Id.* "The defendant has the ultimate burden of proving the causation element to a preponderance of the evidence." *Id.* Here, whether viewed as a failure to make a prima facie showing or a failure to carry his ultimate burden

11

of proof, the circuit court clearly determined that Sharpe failed to show that the officers' misinformation contributed to his decision to refuse the requested test.

¶29    Given the circuit court's determination that Sharpe's testimony was incredible—and the lack of any other evidence showing the requisite causal connection—the court did not err by concluding that Sharpe had failed to meet his burden on the third *Quelle* factor. As such, the court properly determined that Sharpe's refusal of the requested breath test was improper.

## II.  Constitutionality of WIS. STAT. § 343.301

¶30    Sharpe also argues that the circuit court erred by denying his motion to remove the IID requirement from the judgment on the grounds that WIS. STAT. § 343.301 is unconstitutional. The constitutionality of a statute presents a question of law, which we review independently. *State v. Smith*, 170 Wis. 2d 701, 707, 490 N.W.2d 40 (Ct. App. 1992). "All legislative acts are presumed constitutional and every presumption must be indulged to uphold the law if at all possible." *Northwest Airlines, Inc. v. DOR*, 2006 WI 88, ¶26, 293 Wis. 2d 202, 717 N.W.2d 280 (citation omitted). To overcome the presumption of constitutionality, a party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt. *Id.*

¶31    In this case, Sharpe contends that WIS. STAT. § 343.301 is unconstitutional pursuant to the dormant Commerce Clause. The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce … among the several States." U.S. CONST. art. I, § 8, cl. 3. "Courts have consistently held that there is a negative implication to this affirmative grant of power to Congress that restricts the ability of states to regulate interstate

commerce." ***Northwest Airlines***, 293 Wis. 2d 202, ¶27. This restriction, commonly referred to as the dormant Commerce Clause, "prohibits economic protectionism—that is, 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" ***Id.*** (citation omitted). In other words, the dormant Commerce Clause "limits the power of the States to discriminate against interstate commerce." ***Wyoming v. Oklahoma***, 502 U.S. 437, 454 (1992).

¶32 Sharpe, who is a Minnesota resident, asserts that WIS. STAT. § 343.301 discriminates against out-of-state drivers. The statute provides, in relevant part, that when a circuit court determines that a person has improperly refused to take a requested test under WIS. STAT. § 343.305, the court "shall enter an order under par. (am)." *See* § 343.301(1g)(a)1. As relevant here, paragraph (am) requires the court to order that the person's operating privilege for "Class D" vehicles[3] be restricted to operating vehicles that are equipped with an IID and that an IID be installed in every motor vehicle for which the person's name appears on the vehicle's certificate of title or registration. Sec. 343.301(1g)(am)1.[4] An IID restriction imposed under § 343.301(1g)(am)1.

---

[3] A "regular" driver's license in Wisconsin "authorizes the licensee to operate only 'class D' vehicles as described in [WIS. STAT. §] 343.04(1)(d)." WIS. STAT. § 343.03(3)(a). A "Commercial Driver License" is required for the operation of Class A, Class B, and Class C motor vehicles—that is, vehicles meeting certain weight limits, vehicles designed to transport sixteen or more passengers, and vehicles transporting hazardous materials. *See* WIS. STAT. §§ 343.03(3)(b), 343.04(1)(a)-(c). A "Motorcycle Only" license authorizes the operation of only Class M motor vehicles—i.e., motorcycles. *See* §§ 343.03(3)(c), 343.04(1)(e).

[4] Alternatively to, or in addition to, an IID order under WIS. STAT. § 343.301(1g)(am)1., the circuit court may also order

(continued)

13

begins on the date the IID order is issued. Sec. 343.301(2m)(a). The order "extend[s] for a period of not less than one year after the date the [DOT] issues any license granted under" WIS. STAT. ch. 343. Sec. 343.301(2m)(a).

¶33 Thus, while the IID restriction begins on the date the IID order is issued, the restriction cannot end until sometime after the DOT has issued the person a license under WIS. STAT. ch. 343. As Sharpe notes, however, individuals who reside in other states are not eligible for Wisconsin driver's licenses. *See* WIS. STAT. § 343.06(1)(k) (stating that the DOT shall not issue a license "[t]o any person who is not a resident"). Sharpe therefore argues that "out-of-state drivers—even those who install the IID for the full period of the order—can never rid themselves of the IID restriction" unless they become "taxpaying resident[s] of the State of Wisconsin."

---

[t]hat the person participate in a program described in [WIS. STAT. §] 165.957 or that meets the definition of a 24-7 sobriety program under 23 USC 405(d)(7)(A) and regulations adopted thereunder. If the court enters an order under this subdivision, when the person completes or otherwise does not participate in the program, the court shall order that the person's operating privilege for the operation of "Class D" vehicles be restricted to operating vehicles that are equipped with an ignition interlock device, shall specify the duration of the order, shall, except as provided in sub. (1m), order that each motor vehicle for which the person's name appears on the vehicle's certificate of title or registration be equipped with an ignition interlock device, and shall notify the [Department of Transportation (DOT)] of such order.

Sec. 343.301(1g)(am)2. In these appeals, neither party addresses § 343.301(1g)(am)2., asserts that the circuit court entered an IID order under § 343.301(1g)(am)2., or argues that § 343.301(1g)(am)2. is relevant to our analysis. We therefore do not address that subdivision of the statute further.

¶34   Sharpe further asserts that "[t]he manner in which a person has the ability to lawfully operate a motor vehicle across state lines … concerns interstate commerce." He contends that "[t]his is especially true for courier drivers, delivery drivers, food-delivery drivers, taxi drivers, chauffeurs, cater[er]s, and rideshare subcontractors, all of whom make a living based on the ability to lawfully operate a motor vehicle across state lines but are not required to have a commercial driver license ('CDL')." Thus, Sharpe argues that WIS. STAT. § 343.301 impermissibly burdens out-of-state economic interests by discriminating against these out-of-state drivers in favor of drivers who are Wisconsin residents.

¶35   We disagree with Sharpe's assertion that WIS. STAT. § 343.301 is facially unconstitutional under the dormant Commerce Clause because it discriminates against out-of-state drivers. The law treats in-state and out-of-state drivers the same. In both cases, upon a court's determination that the driver improperly refused a requested chemical test under WIS. STAT. § 343.305, the court is required to order that the person's Wisconsin operating privilege for the operation of Class D vehicles be restricted to vehicles equipped with an IID and that an IID be installed in each motor vehicle for which the person's name appears on the vehicle's certificate of title or registration. Sec. 343.301(1g)(am)1. For both in-state and out-of-state drivers, the IID restriction begins on the date the court issues its order, and the restriction lasts for a given time period after the person has been issued a Wisconsin driver's license by the DOT.

¶36   As the State notes—and Sharpe does not dispute—an IID restriction imposed by a Wisconsin court on an out-of-state driver does not prohibit that person from obtaining or maintaining a driver's license in another state. Nor does a Wisconsin IID restriction apply to an out-of-state driver's operating privilege in

another state or require the person to install an IID in order to drive in his or her home state or any other state, aside from Wisconsin. Instead, an IID order under WIS. STAT. § 343.301 applies only to the person's Wisconsin operating privilege with respect to Class D motor vehicles.

¶37 Furthermore, an IID order does not prevent a driver—whether a Wisconsin resident or not—from driving in this state. It merely requires a driver who has been arrested for OWI and has improperly refused a chemical test under WIS. STAT. § 343.305 to install a device in his or her vehicle that aims to prevent the driver from committing another OWI offense in Wisconsin. Again, that requirement applies to both in-state and out-of-state drivers. We agree with the State that by enacting WIS. STAT. § 343.301, the legislature did not "bar[] any person from coming to Wisconsin, or even from driving in Wisconsin. It [merely restricted] the privilege to drive" in this state. On these facts, Sharpe has not proven beyond a reasonable doubt that § 343.301 is facially unconstitutional.

¶38 Sharpe's as-applied constitutional challenge to WIS. STAT. § 343.301 also fails. To prevail on an as-applied constitutional challenge, "the challenger must show that his or her constitutional rights were actually violated." *State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63. We agree with the State that Sharpe has not shown such a violation. Again, Sharpe has not shown that § 343.301 has had any additional effect on him as an out-of-state driver that it would not have had if he were licensed in Wisconsin. He has not shown that § 343.301 has prevented him from driving in Wisconsin. To the contrary, the circuit court's IID order permits Sharpe to drive in this state provided that he has a valid driver's license and has an IID installed in his vehicle. These are the same restrictions that an IID order under § 343.301 would impose on an in-state driver.

¶39    As the State notes, the only potential way in which WIS. STAT. § 343.301 differs when applied to Sharpe—as opposed to an in-state driver—is that "it might be impractical to have the IID requirement removed once [Sharpe] has completed the legal requirement of having an IID installed for a certain amount of time."  We agree with the State, however, that an as-applied constitutional challenge on this basis is not ripe because Sharpe "has not shown that he has ever had an IID installed in his vehicle."  *See State v. Armstead*, 220 Wis. 2d 626, 631, 583 N.W.2d 444 (Ct. App. 1998) ("If the resolution of a claim depends on hypothetical or future facts, the claim is not ripe for adjudication and will not be addressed by this court.").  In other words, Sharpe has not shown that he has attempted to satisfy the IID order but has been unable to have the order removed after having an IID installed in his vehicle for the requisite time period due to his out-of-state residence.  We therefore reject Sharpe's as-applied challenge to § 343.301.

        *By the Court.*—Judgment and orders affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.