SCALES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 250.   Argued June 5, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 286.)

486

For the plaintiff in error there was a brief by *Howard B. Eisenberg*, state public defender, and *Richard M. Sals*, assistant state public defender, and oral argument by *Mr. Sals*.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The defendant does not argue that there was insufficient evidence to show that he was the driver. Accordingly, we need not detail that evidence. Suffice it to say an eyewitness saw the Scales vehicle a few seconds before the accident, and he identified Scales as the driver.

The principal argument is that the admissions made to Officer Keckler in the emergency room of the hospital should have been excluded because they were the product of a custodial interrogation in which Scales was not informed of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

*Miranda* held that the prosecution could not use statements resulting from custodial interrogation of a defendant unless the prosecution demonstrated that the defendant had been informed of his constitutional rights and that he had waived them. Custodial interrogation was defined in *Miranda:*

". . . we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (P. 444)

The trial judge made a specific finding that the confession was voluntary. While voluntariness is a partial test of the admissibility of a confession, we have, in addition, insisted not only on a *Goodchild* hearing on that point, but also a hearing to determine compliance with *Miranda.* Voluntariness per se is not attacked on this appeal. It is only argued that *Miranda* was not complied with, and that this in itself is sufficient to exclude the

statement and to warrant a new trial. We agree that, for a statement to be admissible, it must not only be voluntary, but it must be constitutionally antiseptic in terms of the mandate of the United States Supreme Court in *Miranda*.

The state agrees that Scales was not informed of his constitutional rights, but it argues that he was not in custody when questioned; and, accordingly, his statement was properly admitted. The state relies on *Huebner v. State* (1967), 33 Wis. 2d 505, 516, 147 N. W. 2d 646. The court therein said:

"[I]f the law-enforcement officer by order or conduct indicates the person is obliged to remain in the officer's presence or to come to the police station, such person is for practical purposes arrested because of the imposition of the will of the police officer over the freedom of the person. The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest. . . . The same result is reached by a voluntary submission to such custody. But there must exist the intent to take into custody and a corresponding understanding by the person arrested that he is in 'custody,' although no formal declaration of arrest is required."

It is argued that, under the language of *Huebner*, not only must there be an arrest which results in custody, but also the accused must know and understand that he was in custody.

In the instant case, there was an arrest. Officer Keckler so testified. However, Scales himself testified at trial that he could not remember anything that happened within the first three or four days following the accident. Hence, there is no evidence that, at the time of the interrogation, Scales considered himself under arrest or in custody. Although *Huebner* properly states the law in respect to the circumstances evident in that case, it is not relevant to the instant situation. Huebner

was stopped while driving his automobile, and he was asked to report to the police station. We held that the circumstances there did not constitute an arrest "so as to subject his liberty to the actual control and will of the person making the arrest." (P. 516) Not only is *Huebner* inapplicable under the facts, but, in addition, it was pre-*Miranda* and was governed by *Escobedo v. Illinois* (1964); 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977. While *Huebner* might be highly relevant, even to a *Miranda* case involving similar circumstances, it is not pertinent here, either as to the law or the facts.

The meaning of *Miranda* was discussed in *Orozco v. Texas* (1969), 394 U. S. 324, 89 Sup. Ct. 1095, 22 L. Ed. 2d 311. Orozco was interrogated in his own bedroom by four police officers. One of the officers stated at trial that Orozco was not free to go because he was under arrest. However, neither the Texas Court of Criminal Appeals (*Orozco v. State* (1967), 428 S. W. 2d 666), nor the United States Supreme Court opinion recited that Orozco was told he was under arrest. The United States Supreme Court emphasized the applicability of *Miranda*, because the defendant was "not free to leave." (P. 327) It was stressed that it was not only custody at a police station that triggered a *Miranda* situation, but the fact that the defendant was *"otherwise deprived of his freedom of action in any significant way."* (*Orozco*, p. 327)

*Miranda* extensively discusses the fifth amendment privilege, as did *Escobedo:*

"[T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons *in all settings* in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." (*Miranda,* p. 467) (Emphasis supplied.)

The emphasis of *Miranda, Orozco,* and *Escobedo* is upon the necessity of extending constitutional rights to

persons in the presence of overwhelming police power and who are cut off from contact, for the time being at least, from family, friends, and counsel. Certainly, that situation existed when Scales was interrogated in the emergency room in the presence of three police officers and was unable to move. It is argued, however, that his immobilization was not the result of any action of state authorities, and therefore the fifth amendment right should not apply to Scales' interrogation. True, *Miranda* itself points out that it is applicable "when an individual is taken into custody or otherwise deprived of his freedom *by the authorities* . . . ." (P. 478)

We conclude, however, that the basic rationale of *Miranda* requires its application in this case. The defendant was as effectively bound to his bed as if he had been shackled to it. Police officers cannot take advantage of a coercive situation which limits an accused's freedom of action and then proceed to interrogate him without proper admonitions. All the coercive factors *Miranda* attempts to mitigate are present in this case. Accusatorial attention had focused upon Scales. Ford was already dead. Scales was under arrest. To say that he was not in custody, either because he was not conscious and did not realize he was arrested or because he was not explicitly told that he was in custody, is sophistry. The use of Scales' admissions obtained in the absence of the required *Miranda* warnings was a violation of the fifth amendment privilege against self-incrimination. The statement was not admissible.

The error, though of constitutional dimensions, was harmless. The fact that Scales was intoxicated was proved beyond a reasonable doubt by a test of the blood sample. In addition, there was convincing testimony by an eyewitness that the driver of the automobile was Scales. Only these questions—intoxication and responsibility for driving the car—were at issue. They were determined beyond cavil. Even under the earlier test of *Chapman*

*v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, we would conclude beyond a reasonable doubt that the erroneous admission of the in-custody statement did not contribute to the conviction of the defendant.

We have, however, in *Wold v. State* (1973), 57 Wis. 2d 344, 204 N. W. 2d 482, accepted the harmless error test set forth in *Harrington v. California* (1969), 395 U. S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. In *Wold* we stated:

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt." (P. 356)

Under that test, the error in admitting the defendant's statement is harmless. In view of how little the questioned statement contributed to the prosecution's case, it is difficult to understand the prosecutorial decision to use it when there was an abundance of evidence from alternate and constitutionally unimpeachable sources.

We stated, in discussing the *Miranda* problem, that the result of the analysis of the blood sample was admissible. Prior to the effective date of the implied consent law, sec. 4, ch. 383, Laws of 1969 (now sec. 343.305, Stats.), this court, in *Waukesha Memorial Hospital v. Baird* (1970), 45 Wis. 2d 629, 173 N. W. 2d 700, adopted the rationale of *Schmerber v. California* (1966), 384 U. S. 757, 86 Sup. Ct. 1826, 16 L. Ed. 2d 908. In *Waukesha Memorial Hospital,* we said that the taking of blood after an arrest was an appropriate search incident to the arrest. In this case, an arrest had been made.

The defendant relies upon sec. 343.305, Stats., and argues that the procedure set forth therein was not followed by the police in this case. It is not our understand-

ing, however, that the implied consent law was intended to give greater rights to an alleged drunken driver than were constitutionally afforded theretofore. Rather, its purpose was to impose a condition on the right to obtain a license to drive on a Wisconsin highway. The condition requires that a licensed driver, by applying for and receiving a license, consent to submit to chemical tests for intoxication under statutorily determined circumstances. The refusal to actually submit to such test can result in revocation of the license. It was intended to facilitate the taking of tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highway. In light of that purpose, it must be liberally construed to effectuate its policies.

We need not resort to the terms of sec. 343.305, Stats., to justify the conduct of the police here, but it should be pointed out that, when the accused is unconscious or otherwise incapacitated, he is "presumed not to have withdrawn his consent." That was the situation here. The implied consent law does not limit the right to take a blood sample as an incident to a lawful arrest. It should be emphasized, however, that the arrest, and therefore probable cause for making it, must precede the taking of the blood sample. We conclude that the sample was constitutionally taken incident to the lawful arrest. The alcohol test showed blood alcohol of .16 percent. Under sec. 885.235 that percentage of alcohol in the blood is prima facie evidence that Scales was under the influence of intoxicants. This conclusion was corroborated by other evidence, including the erratic nature of the driving.

We conclude that there was evidence for the jury to find beyond a reasonable doubt that Scales was the driver of the vehicle and caused the death of Ford while under the influence of intoxicants.

While the conviction must be affirmed, we conclude that the trial judge failed to exercise proper discretion in

the imposition of sentence. At the sentencing hearing the trial judge said:

"It is my judgment that until you demonstrate some remorse, until you acknowledge your responsibility for the crime that you have committed, probation is not in order and efforts at rehabilitation will come to naught.
"It is for that reason that it is my judgment . . . that I can do nothing but order your incarceration . . . ."

This court has indicated in at least two cases, though upholding the imposed sentence, that it considered it an improper criterion to impose a harsher sentence because, after a finding of guilt, the defendant refused to admit guilt. *Finger v. State* (1968), 40 Wis. 2d 103, 161 N. W. 2d 272, and *Gregory v. State* (1974), 63 Wis. 2d 754, 218 N. W. 2d 319.

In *Finger,* we stated that there was no evidence that the refusal to confess guilt influenced the judge's sentencing discretion. In *Gregory,* we pointed out there was no attempt by the judge to urge or coerce the defendant into confessing guilt but, rather, the judge was concerned over the fact that Gregory, who had a long criminal record, claimed that he was rehabilitated but refused to admit his guilt. Moreover, the trial judge in *Gregory* demonstrated that he was not attempting to compel the defendant to acknowledge his complicity in the act for which he had been found guilty.

The United States Court of Appeals was confronted with a somewhat similar situation in *Thomas v. United States* (5th Cir. 1966), 368 Fed. 2d 941. In that case, it set aside the sentence. The trial judge in *Thomas* told the defendant after conviction:

" 'If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court also must take that into account.' " (P. 944)

The court in *Thomas* vacated the sentence and remanded for resentencing because, when the defendant remained silent, "[H]e paid a judicially imposed penalty for exercising his constitutionally guaranteed rights." (P. 946) *Thomas* held that, when the defendant was given the opportunity for allocution following the finding of guilty, the right of appeal remained open to him, and the court, citing numerous United States Supreme Court cases, stated, "[A]ppeal is . . . an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant." (P. 945) *Thomas* held that a defendant, even after conviction, could not be compelled to pay a price for the retention of his fifth amendment rights. In the instant case, Scales was obliged to pay that price.

We conclude that the procedure utilized at sentencing was coercive and in derogation of Scales' fifth amendment rights.

We have, on numerous occasions, held that a post-trial confession of guilt and an expression of remorse may be considered in mitigation of a sentence. *State v. Tew* (1972), 54 Wis. 2d 361, 195 N. W. 2d 615; *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512. From these cases, the state argues that, if remorse may be used in mitigation, lack of remorse may properly be considered in sentencing. We do not agree. The rights against self-incrimination discussed in *Thomas* are based upon the founding fathers' fear of governmental coercion. The Bill of Rights confers no rights upon the state, but limits the power of the state. The exercise of the right against self-incrimination is a one-way street. If the defendant exercises that right, he may not be penalized for it, even after a jury's determination of guilt. On the other hand, in the expectation of leniency, he may waive that right and acknowledge his guilt and express his contrition and remorse. A trial judge may, but he need not, take into

consideration such expressions as indicative of the likelihood that the rehabilitory process hoped for in the criminal law has commenced; but where, as here, the defendant refuses to admit his guilt, that fact alone cannot be used to justify incarceration rather than probation.

The crime with which the defendant was charged and for which he was found guilty is a serious offense and the judge, in the exercise of his discretion, based upon proper relevant factors, might well have chosen to impose a term of incarceration rather than probation, but he did not make that crucial decision on such other factors. We can only conclude, from the words of the judge, that the decision to imprison was based upon the refusal to confess guilt and to express remorse and that, had Scales done so, he would have been placed on probation.

Under the standards of *McCleary v. State,* there was an improper exercise of discretion, and the sentence must be vacated and the cause remanded to the trial court for resentencing under appropriate standards.

*By the Court.*—Order denying motion for new trial affirmed; judgment of conviction affirmed; judgment of sentence vacated; and cause remanded for further proceedings.

ROBERT W. HANSEN, J. *(concurring).* How can it be said the "basic rationale" of a particular decision requires its application to a situation where the precise language of the decision renders it inapplicable. The majority opinion states, ". . . True, *Miranda* itself points out that it is applicable 'when an individual is taken into custody or otherwise deprived of his freedom *by the authorities* . . . .' " (*Miranda v. Arizona* (1966), 384 U. S. 436, 478, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694) (Emphasis supplied.) True enough, that is what *Miranda* states. So, does it not follow that the question of the admissibility of

*Miranda*-less statements made by defendant to the police boils down to (1) whether the defendant was in police custody when he made them, or (2) whether he had been deprived of his freedom of action by the police at the time he made the statements? Two traffic citations were placed on defendant's bed at the hospital, but he was not told that he was in any way under arrest or in custody. No guard was stationed at the hospital to prevent defendant's leaving, and defendant makes no claim that he was advised that he was under arrest or in custody, or that he knew or understood such to be the situation. Nonetheless, the majority concludes that the defendant ". . . was as effectively bound to his bed as if he had been shackled to it. . . ." This is a reference, not to police presence or action, but to the injuries sustained in the accident involved. Such test makes the nature of injuries sustained determinative of whether a person is in police custody or "otherwise deprived of his freedom *by the authorities.*" So a person with a broken arm is not in custody because he can walk away. A person with a broken leg is in custody or "deprived of his freedom *by the authorities*" because he cannot walk away. Whatever may be said for this ambulatory versus nonambulatory approach, both the language and rationale of *Miranda* are accordioned to include it. Where the majority found harmless error, the writer would find no error, upholding the trial court's determination that the defendant was not in custody or "otherwise deprived of his freedom *by the authorities*" at the time he made the statements to the law officers.

I am authorized to state that Mr. Justice CONNOR T. HANSEN joins in this concurring opinion.