GARY J. SCHUSTER, District Attorney Door Count
You have requested my opinion as to whether counties can enter into reciprocal mutual assistance agreements whereby such counties would agree in advance to cooperate in the arrest of persons and in *Page 86 
the subsequent procurement of evidence from arrested persons suspected of violating drunk driving laws who are involved in an accident in one county and transported to a hospital in another county for emergency treatment. Your inquiry is prompted by the dilemma created by an accident occurring in Door County with an injured person (a potential offender of the drunk driving laws) being transported to a hospital in Brown County for necessary emergency treatment and the resultant question of which county's law enforcement personnel are the proper arresting authority. It should be recognized that the cooperation contemplated by your inquiry suggests two alternative procedures: (1) a Door County law enforcement officer (sheriff or county traffic officer) arresting the injured in Brown County; and (2) a Brown County law enforcement officer (sheriff or county traffic officer) arresting the injured in Brown County for the purpose of a prosecution in Door County. For the reasons that follow, I am of the opinion that counties can enter into reciprocal mutual assistance agreements pursuant to section 66.30 (2), Stats., to resolve any dilemmas which may result from the situation posited in your inquiry.
Certain explanations and assumptions regarding my conclusion should be initially stated:
First, by concluding that mutual assistance agreements may be utilized for the purpose contemplated by your inquiry, I do not intend my conclusion to circumscribe the alternatives available to law enforcement agencies. To the contrary, it may well be that the same result may also be accomplished in the absence of such an agreement. Using your example, a Brown County law enforcement officer certainly can effectuate a warrantless arrest of an injured driver in Brown County if the arresting Brown County officer believes on reasonable grounds that the injured driver has committed a traffic crime, i.e., second or subsequent OWI offense. Sec. 968.07 (1)(d), Stats. Similarly, section 345.22
authorizes the Brown County law enforcement officer to effectuate a warrantless arrest when there are reasonable grounds to believe that the injured driver has violated a traffic regulation, i.e. first OWI offense. See also 61 Op. Att'y Gen. 275 (1972). And, still using your example, while the express wording of section 66.305 would appear to suggest that a Door County law enforcement officer could only arrest the injured driver in Brown County upon the specific request of a Brown *Page 87 
County officer (Door County officer relating to Brown County officer that he wishes the latter to request his assistance), section 66.305 arguably does also confer authority on Door County officers to effectuate a warrantless arrest of the injured driver in Brown County in the absence of such a specific request. In order to be practical and effective, however, the latter approach could well raise an additional question — the propriety of a "continuing call" for assistance. See 62 Op. Att'y Gen. 250, 251 (1973). Therefore, while sections 968.07 (1)(d), 345.22 and 66.305 suggest that the contemplated agreements may not always be required, I believe the contemplated agreements do not compromise those instances already covered and, in addition, provide authority for those arguably not covered as well.
Second, my conclusion assumes that the requirement of probable cause has been satisfied in all cases. The relevant provisions of the implied consent law, section 343.305 (2)(b) and (c), contemplate that a lawful arrest be made prior to a request for submission to one of the enumerated intoxication tests. State v.Neitzel, 95 Wis.2d 191, 200, 289 N.W. 828 (1980) (but see,Neitzel, 95 Wis.2d at 205); Scales v. State, 64 Wis.2d 485,494, 219 N.W.2d 286 (1974); 67 Op. Att'y Gen. 314 (1978); 59 Op. Att'y Gen. 183 (1970). Therefore, the probable cause for making the arrest must precede any intoxication test. Scales64 Wis.2d at 494. In this regard, all of the alternative situations considered herein are no different than that which would occur if the accident had occurred and the hospital was located within the same county.
Third, my conclusion assumes that the necessary probable cause for arrest may be transmitted from one law enforcement officer with personal knowledge of the probable cause to another law enforcement officer making the arrest and requesting the intoxication test. See Schaffer v. State, 75 Wis.2d 673, 677,250 N.W.2d 326 (1977); State v. Shears, 68 Wis.2d 217, 253,229 N.W.2d 103 (1975); State v. Mabra, 61 Wis.2d 613, 625,213 N.W.2d 545 (1974); State v. Taylor, 60 Wis.2d 506, 515-16,210 N.W.2d 873 (1973).
Fourth, my conclusion only contemplates agreements between counties regarding the law enforcement personnel of their respective sheriff's department or the county traffic patrol. *Page 88 
The preliminary explanations and assumptions necessary to render the opinion now stated, I turn to the analysis resulting in my conclusion.
As stated in a previous opinion of the attorney general, the decision of the Wisconsin Supreme Court in State v. Barrett,96 Wis.2d 174, 291 N.W.2d 498 (1980), "establishes that extraterritorial exercise of police powers by sheriffs and county traffic officers is primarily a matter for legislative clarification and sets forth some of the considerations in determining when county officers can make arrests outside of county boundaries." 69 Op. Att'y Gen. 194 (1980).
Although Barrett appears to limit the extraterritorial exercise of police powers by county law enforcement personnel, nothing in the Wisconsin statutes prohibits a county board from entering into an agreement with another county to enable law enforcement personnel to cooperate in the manner contemplated by your inquiry.
The Wisconsin Constitution outlines the powers of county boards: "The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe." Wis. Const. art. IV, § 22.
Section 59.07 describes the many and varying general powers that each county board may exercise, "which shall be broadly and liberally construed and limited only by express language." Subsection (11) of section 59.07 provides for the joint cooperation of the many county boards as provided by section 66.30. And, by that latter provision, the Wisconsin Legislature has specifically granted to the counties the power to enter into cooperative agreements:
 In addition to the provisions of any other statutes specifically authorizing cooperation between (counties), unless such statutes specifically exclude action under this section, any (county) may contract with other (counties), for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by law . . . . This section shall be interpreted liberally in favor of the cooperative action between (counties).
sec. 66.30 (2), Stats. (The word county has been substituted for the word municipality as provided in section 66.30 (1)(a).) *Page 89 
While the legislative history of section 66.30 appears to be silent regarding its specific application to cooperative law enforcement assistance, I am of the opinion that the section provides clear authority for counties to enter into a mutual assistance agreement as contemplated by your inquiry.
In Village of McFarland v. Town of Dunn, 82 Wis.2d 469, 475,263 N.W.2d 167 (1978), the Wisconsin Supreme Court held that section 66.30 (2) provided for the municipalities defined in section 66.30 (1) to contract with one another for "the receipt or furnishing of law enforcement services or for mutual law enforcement assistance . . . ." And, prior to the McFarland case, several opinions issued from this office suggested the use of intergovernmental cooperation agreements for the purpose of law enforcement assistance. 58 Op. Att'y Gen. 72 (1969); 62 Op. Att'y Gen. 250 (1973); 63 Op. Att'y Gen. 596 (1974). As stated in the earliest of those opinions:
 By enactment of sec. 66.30, Stats., the legislature has left the policy determination as to whether there should be a cooperative arrangement, by contract, to the local legislative bodies concerned. The local units of government cannot, however, avoid their ultimate responsibilities of maintaining peace and order in their respective units by means of cooperative arrangements. Some of the duties and services may be shifted to the other unit of government, but the basic responsibility involved cannot.
58 Op. Att'y Gen. at 77.
Cooperative mutual assistance takes many forms and arises from necessity. For example, in a related area, this office was requested to give an opinion regarding the necessity, pursuant to section 343.305 (1), of every law enforcement agency having its own equipment to administer two forms of intoxication tests, or at least having such equipment available within its own territorial jurisdiction. 63 Op. Att'y Gen. 119 (1974). This office concluded:
 [T]he method by which law enforcement agencies comply with the requirement that they must be prepared to administer a second test is to make arrangements with others for obtaining the specimen and for its analysis. Nothing in the law requires that this must be done within the territorial jurisdiction of the particular agency. *Page 90 
Id. at 121.
The cooperation necessary to solve the dilemma of your example does not appear to contravene conditions affirmatively prescribed by any relevant statute. See secs. 59.23, 59.24 (2), 66.305 and 66.315, Stats. Apart from any duties derived from the common law, the statutes require or permit action by county law enforcement personnel outside the appointing jurisdiction in several instances. With respect to sheriffs alone, see secs. 53.06, 59.25
(1), 59.29 and 66.305. See also 45 Op. Att'y Gen. 267 (1956).
A final consideration in support of my conclusion relates to the application of the statute. By its own words, section 66.30 (2) "shall be interpreted liberally in favor of cooperative action between the municipalities." Here, the cooperative action involves an area of serious legislative concern, where the intent of the Legislature is clear. As the Wisconsin Supreme Court recently stated:
 The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers. Scales v. State, 64 Wis.2d 485, 219 N.W.2d 286 (1974). We stated in Scales that the implied consent law was to facilitate the taking of tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highway. The proper and liberal construction of legislation designed for this very purpose militates against . . . [impeding] the police in obtaining evidence against those drivers who are under the influence of intoxicants.
Neitzel, 95 Wis.2d at 203-04 (bracketed material supplied).
I wish to make one additional comment regarding mutual assistance agreements themselves. I recommend that they be carefully drafted and approved by the county boards of the participating law enforcement agencies. See secs. 57.02 (1) and 57.07 (11), Stats. Funding arrangements and reimbursement should be fully considered and set forth in the agreements. Cf. sec. 66.315, Stats.
BCL:JSS *Page 91