COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1787-CR**

Cir. Ct. No. 2017CF183

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JARVIS KENWAUN WEBB,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JOSEPH R. WALL, Judge.  *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jarvis Kenwaun Webb appeals from the judgment convicting him of burglary of a building or dwelling, as a party to a crime. He also appeals the order denying his motion for postconviction relief in which he argued that his conviction should be vacated and dismissed because there was insufficient evidence at trial. He also argued that his sentence should be modified because his sentence was unduly harsh compared to his two co-actors. For the reasons set forth below, we affirm.

## BACKGROUND

¶2 Five men burglarized a Guarantee Bank located in a Pacific Produce grocery store shortly after 1:00 a.m. during a blizzard on December 18, 2016. They emptied the contents of the teller machines and took a large amount of coins from a coin machine. The bank's video surveillance cameras captured the entire event.

¶3 Money packs removed from the teller drawers contained GPS tracking devices that were designed to activate when removed from the bank, which the men failed to remove. Accordingly, one of the tracking devices began transmitting a signal, tracking the men when they left the bank. Officers located the signal coming from the tracking device at 1:09 a.m. about fourteen blocks from the bank. Given the blizzard conditions and the distance travelled in four minutes, officers believed the device was transmitting from a vehicle, likely from the time it left the bank. When officers caught up to the signal, they observed a gold SUV and a sedan. However, the gold SUV turned and started traveling a different route than the sedan, and officers continued to follow the signal coming from the sedan. The sedan was Webb's blue Lincoln Town Car.

¶4 Officers followed Webb's car and conducted a stop at 1:22 a.m. Webb was driving, and he had two passengers, Dontrell Henley and Pierre Webb,[1] in the car. Webb complied with officers during the stop and did not attempt to flee.

¶5 When the car was stopped, Pierre was wearing a Nike windbreaker similar to the windbreaker seen on one of the men in the surveillance footage, and Henley had 337 quarters in his jacket pocket; he was also wearing a heavy winter coat similar to the coats worn by the men in the surveillance footage. When officers later booked Pierre, they discovered that he also had a tracking device in his shoe. At the time of the stop, officers did not notice any indications that any of the men had been running or had spent time outside in the snow.

¶6 As a result of a search of Webb's car, officers recovered several items further indicating that Webb and his passengers were connected to the burglary, including a coin bag with the words Guarantee Bank printed on it. The bag contained more than $300 worth of coins and matched the serial number of a coin bag missing from the bank. Also, even though Webb's car already had license plates on it, officers found a license plate with the number 907-MRP in his car. A subsequent search of Webb's cell phone that officers recovered from his car showed pictures of his car with the 907-MRP license plate on it instead of the license plates that were on the car at the time of the stop. Officers also found that there was no recorded activity on his phone in the week leading up to the burglary.

---

[1] All parties involved indicate that Pierre Webb is not related to Jarvis Webb. We refer to Pierre Webb throughout this opinion as Pierre to avoid confusion.

¶7      Further investigation of the burglary did not place Webb inside the bank.  Footprints left in the snow did not match Webb's shoes, his fingerprints were not found inside the bank, he could not be identified using the surveillance footage because the men had concealed their faces while inside the bank, and at the time of the stop, Webb was wearing a gray hoodie, which was different than the heavy winter coats worn by the men in the surveillance footage.  Webb maintained that he had been at his girlfriend's house that night and simply gave Pierre and Henley a ride, without any knowledge of the burglary.

¶8      On February 10, 2017, Webb was charged with burglary of a building or dwelling, as a party to a crime, under the theory that Webb served as the getaway driver.  Webb's and Pierre's cases were joined for trial, and both were tried together at the end of February 2018.[2]  On February 23, 2018, the jury found both Webb and Pierre guilty following the trial.

¶9      The trial court sentenced both Webb and Pierre on April 19, 2018. Pierre received a sentence of four and one-half years of imprisonment composed of one and one-half years of initial confinement and three years of extended supervision, and Webb received a sentence of five and one-half years of imprisonment composed of two and one-half years of initial confinement and three years of extended supervision.  In determining an appropriate sentence for Webb, the trial court considered a multitude of factors, including his extensive criminal

---

[2] Henley pled guilty on February 26, 2018, and he was sentenced on March 16, 2018. Henley received a sentence of seven years of imprisonment composed of three years of initial confinement and four years of extended supervision.  Henley's sentence was stayed for four years of probation.

record and the fact that Webb showed no remorse for his involvement in the burglary.

¶10 On July 15, 2019, Webb filed a motion for postconviction relief seeking to vacate his conviction or, in the alternative, to modify his sentence. He argued that there was insufficient evidence to support his conviction and that the trial court imposed a sentence that was unduly harsh. The trial court denied Webb's motion on September 11, 2019, and this appeal followed.

## DISCUSSION

¶11 On appeal, Webb renews his arguments that there was insufficient evidence to support his conviction and that the trial court imposed a sentence that was unduly harsh and severe in comparison to the sentences imposed on Pierre and Henley. We address each argument in turn.

### I. There was sufficient evidence to support Webb's conviction

¶12 Wisconsin law allows a "person concerned in the commission of a crime" to be charged as a principal even if the person did not directly commit the crime. WIS. STAT. § 939.05(1) (2017-18).[3] A person can be concerned in the commission of a crime if the person "[i]ntentionally aids and abets" the commission of the crime. Sec. 939.05(2)(b). Under this approach, the State is required to prove that "the aider: (1) undertook conduct (either verbal or by overt action) which as a matter of objective fact aided another in the execution of a crime; and (2) consciously desired or intended that the conduct would yield such

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

assistance." ***State v. Knoll***, 2000 WI App 135, ¶8, 237 Wis. 2d 384, 614 N.W.2d 20. In his appeal, Webb disputes that there was sufficient proof of the second aspect, namely that he had a conscious desire or intent to aid in the commission of the burglary, because he claims that he had no knowledge of the burglary.

¶13 A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. ***State v. Poellinger*** establishes the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citation omitted). Additionally,

> [i]n reviewing the sufficiency of circumstantial evidence to support a conviction, [we] need not concern [ourselves] in any way with evidence which might support other theories of the crime. [We] need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*Id.* at 507-08. Applying this standard of review, we conclude that there was sufficient evidence for the jury to have reasonably concluded that Webb intended to aid and abet the commission of the burglary.

6

¶14    At trial, the jury heard testimony from several officers involved in the stop and subsequent investigation of the burglary.   The jury also heard testimony from two of the bank's employees regarding the burglary and the bank's security measures.   Importantly, the jury heard repeated testimony that movement out of the bank triggered a GPS tracker from a money pack at 1:05 a.m.   The jury also heard testimony from the officer who followed Webb's car and conducted the stop that the signal from the tracker was located fourteen blocks from the bank just four minutes later at 1:09 a.m.   That same officer then testified that Webb was stopped at 1:22 a.m. with two individuals in his car who readily appeared to be connected to the burglary based on their clothing and items they were carrying. That officer also testified that there were no indications that Webb or his passengers were out of breath or had wet clothing as if they had been traveling on foot as would have been consistent with Webb's defense that he offered a ride to Pierre and Henley after they committed the burglary.

¶15    Additional testimony by officers involved in the search of Webb's car showed that a coin bag from the bank was located in the backseat, that Webb had a license plate with a different number on the front seat, and that Webb's cell phone was recovered from the driver's side door.  Additional testimony by bank employees and investigating officers identified the coin bag as one of the bags missing from the bank and also identified the GPS tracker as one of the trackers missing from the bank.

¶16    As it relates to the license plate, an officer testified as to the significance of finding a second license plate in the front seat of Webb's vehicle: "[I]t's not uncommon for … criminals to use numerous plates for one vehicle in order to disguise that vehicle from law enforcement to avoid detection by law enforcement."   Another officer then testified regarding the search conducted on

Webb's cell phone and the lack of activity on the phone during the week preceding the burglary, which was consistent with an inference that information had been deleted from the phone. Further, this officer testified that the phone logged multiple calls and other activity on it until December 12, 2016, when all activity on the phone just stopped. Viewed as a whole, we conclude that the jury could reasonably infer that Webb knew about the burglary and, therefore, intended to aid in its commission by serving as the getaway driver for Pierre and Henley.

¶17 Webb argues that the evidence introduced at trial is merely circumstantial and also supports an inference that he offered a ride to Pierre and Henley without any knowledge of the burglary. He supports his argument with the fact that the jury asked several questions during its deliberations.[4] However, "[i]t is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Poellinger*, 153 Wis. 2d at 501. Moreover, "[b]y its very nature, intent is an elusive element and is rarely susceptible to proof by direct evidence. Because one generally intends the consequences of his acts, intent can often be inferred from those acts and their consequences." *State v. Marshall*, 92 Wis. 2d 101, 123, 284 N.W.2d 592 (1979) (citation omitted). Therefore, we reject Webb's argument that the fact that the jury's verdict was supported by circumstantial evidence should lead us to conclude that there is insufficient evidence to support his conviction.

---

[4] Webb also seems to raise the point that the trial court did not adequately answer the jury's questions. We decline to address this point as it has not been adequately developed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶18     We also reject Webb's argument that there was insufficient evidence to support his conviction because the jury could have inferred that Webb picked up Pierre and Henley without knowledge of the burglary. It is not our role to question the inference of Webb's guilt chosen by the jury so long as it is a reasonable inference from the evidence. *See Poellinger*, 153 Wis. 2d at 506-07. Nor is it our role to replace the jury as the trier of fact. We "must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 507. The evidence here shows that Webb was driving in the area of the burglary at 1:09 a.m. during a blizzard with items taken from the bank and two individuals who could readily be placed inside the bank. We cannot conclude that the jury's chosen inference that Webb knew of the burglary and, thus, intended to aid in the commission of the burglary as the getaway driver, is incredible as a matter of law. Therefore, we reject Webb's argument.

## II.     The trial court properly exercised its discretion at the time of sentencing

¶19     Webb next argues that the trial court erroneously exercised its discretion by imposing a sentence on him that is unduly harsh and unconscionable, particularly in light of the lesser sentences imposed on Pierre and Henley.

¶20     We review whether the sentence imposed is unduly harsh and unconscionable for an erroneous exercise of discretion. *State v. Grindemann*, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507. "We will not set aside a discretionary ruling of the trial court if it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach." *Id.* We presume that the trial court acted reasonably. *State v. Tappa*, 2002 WI App 303,

¶16, 259 Wis. 2d 402, 655 N.W.2d 223. However, a trial court's reliance on improper factors constitutes an erroneous exercise of discretion. *State v. Pico*, 2018 WI 66, ¶48, 382 Wis. 2d 273, 914 N.W.2d 95.

¶21 At the sentencing hearing, the trial court began by stating that it was "to look at the gravity of the offense, the background of [Webb], and protect the public." The trial court acknowledged that the burglary here was non-violent in that it occurred in the middle of the night when no one was present to be harmed and that it did not involve the use of guns. However, the trial court still considered the nature of the offense to be "very, very serious," especially given the evidence that the burglary was "well-planned out." The trial court also considered it to be an "aggravating factor" that the crime was a burglary of a bank because of the burglary's impact on the community's trust in its banks and the impact on this bank's reputation and business as a secure institution.

¶22 The trial court acknowledged that it received several letters in support of Webb, including letters from Webb's wife, his pastor, and his employer, indicating that Webb had a positive impact on his community that weighed in Webb's favor. The trial court, however, recognized that Webb has consistently had the support of those around him yet still had an extensive criminal record involving violent crimes. The trial court last considered that Webb showed no remorse for his actions, except for the impact this has had on his wife, and used Webb's lack of remorse to find that Webb is "just not getting the picture." The trial court, therefore, found that Webb's extensive criminal record coupled with his lack of remorse showed a need to protect the public and to deter Webb. Based

on these considerations, the trial court imposed a sentence of five and one-half years.[5]

¶23    As noted, Webb further argues that his sentence was unduly harsh and unconscionable in light of the lesser sentences that the trial court imposed on Pierre and Henley. However, "[t]he court is not required to base its sentence determination on the sentences of other defendants." *Tappa*, 259 Wis. 2d 402, ¶20. "A mere disparity between the sentences of co-defendants is not improper if the individual sentences are based upon individual culpability and the need for rehabilitation." *State v. Toliver*, 187 Wis. 2d 346, 362, 523 N.W.2d 113 (Ct. App. 1994). Based on the record before us, the disparity among the sentences imposed here exists due to the attempt to individualize the sentences based on the specific needs of each defendant. At the time of Webb's sentencing, the trial court considered Webb's particular circumstances, without comparing him to Pierre or Henley.

¶24    Moreover, in its decision denying Webb's postconviction motion, the trial court noted that there were differences between Webb, Pierre, and Henley that explained the differences in the sentences. It stated that neither Pierre nor Henley had the same extensive criminal record that Webb has. The trial court noted that Pierre had multiple charges that never resulted in convictions and Henley's record indicated that he was involved in non-violent offenses. Additionally, it stated that both Pierre and Henley took responsibility for their

---

[5] Webb's sentence of five and one-half years is well within the statutory maximum for a Class F felony set by WIS. STAT. § 939.50(3)(f) and is, therefore, presumptively reasonable. *See Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975) ("The trial judge has discretion in determining the length of sentence within the permissible range set by statute.").

11

actions and showed remorse. *See Scales v. State*, 64 Wis. 2d 485, 496, 219 N.W.2d 286 (1974) (allowing the consideration of remorse as a mitigating factor).

¶25    By contrast, the trial court described Webb's criminal history as a "march of criminal offenses." The trial court went on to describe each of Webb's criminal acts that he committed as a juvenile, which included a stolen car, theft, possession of a dangerous weapon, and retail theft, for which he received ten months at a juvenile facility. It also noted that, as an adult, Webb was convicted of felon in possession of a firearm and was sentenced to prison for eighteen months of initial confinement and eighteen months of extended supervision. It also noted that Webb violated his conditions of extended supervision and his agent placed him in custody for those violations. Next, the trial court stated that Webb "had the obstruction causing injury to a police officer, possession of cocaine" and received seven months "in jail on that." "Then soon after getting out [Webb] violated a domestic violence injunction by apparently right after he was charged [he] went to the victim's house [and] threw a brick through her window."

¶26    The trial court then stated: "I don't know when he is going to wake up. He gets sent to prison for eighteen months and then this happens. He obviously is not learning." It then explained "[s]o the goals of my sentence here are protection of the community. That's a priority because of his criminal record, deterrence of [Webb] is very, very strong in terms of the goals."

¶27    Webb further argues that the trial court placed undue weight on an improper factor, namely his lack of remorse. We disagree. Although the failure to express remorse "can be used at sentencing only if it is one amongst other factors, and it receives no undue consideration," *Pico*, 382 Wis. 2d 273, ¶49, based on the trial court's reasoning at the time of sentencing and in its decision denying Webb's

postconviction motion, it is obvious from the record that the trial court considered a wide range of factors in imposing Webb's sentence. Webb's lack of remorse was far from the determining factor in the trial court's decision.

¶28 We, therefore, conclude that the trial court did not erroneously exercise its discretion when imposing Webb's sentence.

## CONCLUSION

¶29 In sum, we conclude that there was sufficient evidence to support the jury's verdict, and that the trial court did not erroneously exercise its discretion regarding Webb's sentence.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.