**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 7, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** 2020AP1895

Cir. Ct. Nos. 2019TR2939
2019TR4074

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

---

COUNTY OF DUNN,

PLAINTIFF-RESPONDENT,

V.

KEVIN J. CORMICAN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

¶1 GILL, J.[1] Following a bench trial, the circuit court found Kevin Cormican guilty of operating a motor vehicle while intoxicated (OWI), as a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

first offense. Cormican now appeals, arguing that the court erred by denying his motion to suppress the results of an evidentiary chemical test of his blood. Cormican argues that his consent to the blood test was invalid because the arresting deputy provided additional information, beyond that set forth on the Informing the Accused Form ("ITA Form"), which was misleading and affected his decision to consent to the blood test. Cormican also argues that his consent to the blood test was involuntary under the totality of the circumstances. We reject these arguments and affirm.

## BACKGROUND

¶2  On May 27, 2019, Dunn County Sheriff's Deputy Chad Pollock stopped a vehicle operated by Cormican for speeding.[2]  After additional investigation, Pollock placed Cormican under arrest for first-offense OWI. Pollock subsequently told Cormican, "I know you mentioned you have a CDL [commercial driver's license] and stuff in Wisconsin …. First offense is a traffic citation. There are some penalties involved, but, you know, I don't think it's the end of the world, or the end of the road there for the, um, CDL."

¶3  After placing Cormican under arrest, Pollock transported him to a hospital for a blood draw. On the way, Cormican said to Pollock, "I'm just wondering how fucked up my life's gonna be over this." Pollock responded, "I know guys with CDLs that have first offenses, so I know they don't, you know, lose them …. I know there'll be penalties, but I don't know exactly what—how that all works. I just know it's not a definite thing."

---

[2] A video of the traffic stop and of Pollock's subsequent conversations with Cormican was introduced into evidence at the suppression hearing.

¶4      At the hospital, Pollock read Cormican the ITA Form promulgated by the Wisconsin Department of Transportation, which contains information that a law enforcement officer is statutorily required to read to a person when requesting a sample of the person's breath, blood, or urine for evidentiary chemical testing. *See* WIS. STAT. § 343.305(3)-(4).  After reading Cormican the ITA Form, Pollock asked whether Cormican was willing to submit to an evidentiary chemical test of his blood.  Cormican responded, "So what happens if I say no?"  Pollock replied, "I cannot give you legal advice, but I can read right here [on the ITA Form] that it says, 'If you refuse to take any test that this agency requests, your operating privileges will be revoked and you will be subject to other penalties.'"

¶5      Cormican then asked what those other penalties would include. Pollock responded that he did not know all the penalties, but "I do know that, if you refuse the test, the state will just automatically take your privileges away.  If you submit to the test, there may be some penalties involved from positive test results."  Pollock continued:

> I guess the bottom line is, the state, when you get your license, you kind of sign off and say that you promise that you're gonna be a legal driver all the time without a substance in your system ... [by] substance, I mean alcohol. I mean, they're just saying that when you get your license, you're telling them that, "Yep, I'm not gonna do this." And you're—and that's what the implied consent is, that when you get your license, you're basically implying your consent to the state, saying, "Yep, you can test me any time; I'm not gonna be over the limit."  But, you know, I can't really give you legal advice, it's just a yes or a no. But I do—you know, as the form clearly states, if you just automatically say "no," the state will just up and take it.

Cormican responded, "I guess I have nothing [unintelligible].  Let's go ahead and test."  Pollock then stated, "I think, you know, in your situation it's probably the best way to go."

¶6      Cormican was ultimately issued a citation for first-offense OWI in Dunn County case No. 2019TR2939.  Based on the same incident, Cormican was also cited for operating a motor vehicle with a prohibited alcohol concentration (PAC) in Dunn County case No. 2019TR4074.  Cormican moved to suppress the results of his blood test in both cases, arguing that he did not validly consent to the test because Pollock improperly influenced his decision to consent.   More specifically, Cormican argued that his consent was invalid because: (1) Pollock exceeded his duty under WIS. STAT. § 343.305(4) by providing additional information, beyond that included on the ITA Form; (2) the additional information was misleading; and (3) the misinformation affected Cormican's choice to consent to the blood test.  *See **County of Ozaukee v. Quelle***, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by **Washburn County v. Smith***, 2008 WI 23, ¶64, 308 Wis. 2d 65, 746 N.W.2d 243.  Cormican also argued that his consent was involuntary because Pollock "engaged in an unlawful attempt to incentivize [his] consent."

¶7      The circuit court held a suppression hearing, at which both Cormican and Pollock testified.  Cormican testified that Pollock's statements that Cormican would automatically lose his operating privilege if he refused to consent to the blood test and that there "may be" penalties due to a positive test result "[a]bsolutely" affected his decision to consent.  Cormican asserted, "I felt like I didn't have a choice.  It was—I wasn't going to win if I said no, I was just out, and if I said yes, there might be a chance."  Cormican also testified that Pollock's statement about Wisconsin's Implied Consent Law led him to believe "that [he] had already agreed to take the test by getting [his] driver's license."  Cormican testified that he "felt like [he] didn't really have a choice because [he] had a driver's license and [he] already gave that implied consent."

¶8      Cormican also testified that he remembered Pollock telling him that Pollock "knew somebody with a CDL and it wasn't the end of the road getting an OWI." When asked whether his OWI citation had been the "end of the road" for him, Cormican responded, "Pretty much at this point. It's been pretty severe." He explained: "[E]ven though I haven't been to court for it, I have not been able to drive for my company. It's cost me a lot of lost hours at work and responsibilities taken away from me because I can't drive the company vehicles." Cormican subsequently clarified that those employment consequences were due to an "administrative suspension." The circuit court took judicial notice that "administrative suspensions occur when someone submits to a test and it shows a prohibited alcohol concentration."

¶9      On cross-examination, Cormican agreed that near the end of his discussion with Pollock, Pollock "explained that he needed a yes-or-no answer on the form." Cormican conceded that at that point, he "understood that [he] had a decision to make" about whether to consent to the blood test.

¶10      The circuit court denied Cormican's suppression motion. The court agreed with Cormican that Pollock had exceeded his duty under WIS. STAT. § 343.305(4) by providing additional information, beyond that included on the ITA Form. The court concluded, however, that Pollock's statements were not misleading. In addition, the court concluded Cormican had not met his burden to show that Pollock's statements affected his decision to consent to the blood test.

¶11      Following a bench trial, the circuit court found Cormican guilty of both the OWI and PAC citations. Pursuant to WIS. STAT. § 346.63(1)(c), judgment was entered on only the OWI citation. Cormican now appeals, arguing that the court erred by denying his suppression motion.

## DISCUSSION

¶12    When reviewing a circuit court's decision on a motion to suppress evidence, we will uphold the court's factual findings unless they are clearly erroneous. *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562. The application of constitutional principles to those facts, however, is a question of law that we review independently. *Id.*

### I.  Pollock's duty under WIS. STAT. § 343.305(4)

¶13    Wisconsin's Implied Consent Law provides, in relevant part, that any person who drives or operates a motor vehicle on the public highways of this state

> is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer.

WIS. STAT. § 343.305(2).  Although "[e]very driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content," a person "may revoke consent … by simply refusing to take the test." *Quelle*, 198 Wis. 2d at 277 (citing § 343.305(2), (9)).  "Thus, a driver has a 'right' not to take the chemical test (although there are certain risks and consequences inherent in this choice)." *Id.* The legislature has "recognized that drivers being asked to take a chemical test should be informed of this choice," and it has therefore required that a law enforcement officer read a person the information set forth in § 343.305(4) when

requesting a chemical test. *Quelle*, 198 Wis. 2d at 277. The ITA Form contains the same information that is set forth in § 343.305(4).

¶14 Here, it is undisputed that Pollock read Cormican the ITA Form and therefore provided the information mandated by WIS. STAT. § 343.305(4). Cormican argues, however, that his consent to the blood test was nevertheless invalid because Pollock also provided him with additional information, beyond that included on the ITA Form. Under these circumstances, we must assess the adequacy of the information provided using the three-prong test set forth in *Quelle*. *See Smith*, 308 Wis. 2d 65, ¶64 & n. 57 (clarifying that the *Quelle* test applies when an officer satisfies his or her duty under § 343.305(4) but then supplies additional information, beyond that set forth in the statute). To obtain relief under that test, a defendant must show that: (1) the officer exceeded his or her duty under § 343.305(4) to provide information to the accused driver; (2) the oversupply of information was misleading; and (3) the officer's failure to properly inform the driver affected the driver's ability to make a choice about chemical testing. *Quelle*, 198 Wis. 2d at 280; *see also State v. Reitter*, 227 Wis. 2d 213, 233, 595 N.W.2d 646 (1999).

¶15 Cormican contends that Pollock exceeded his duty under WIS. STAT. § 343.305(4) by stating that: (1) the state would "automatically" take Cormican's operating privilege away if he refused to consent to a blood test; and (2) Cormican had already consented to the blood test by virtue of obtaining a Wisconsin driver's license. We conclude that neither of these categories of statements satisfies all three prongs of the *Quelle* test.

¶16 First, Pollock's comments indicating that the state would "automatically" take away Cormican's operating privilege if Cormican refused to

consent to a blood test were consistent with the information contained on the ITA Form, which an officer is statutorily required to read to a person when requesting an evidentiary chemical test. *See* WIS. STAT. § 343.305(4). The statute requires an officer to inform a person that "[i]f you refuse to take any test that this agency requests, *your operating privilege will be revoked* and you will be subject to other penalties." ***Id.*** (emphasis added). Pollock read this language from the ITA Form to Cormican. The ITA Form's statement that a person's operating privilege "will be revoked" if the person refuses to take a requested test conveys the same meaning as Pollock's subsequent statement to Cormican that the state would "automatically" take away Cormican's operating privilege if he refused to consent to a blood test. Both statements communicate that if an individual refuses a requested test, the revocation of his or her operating privilege will necessarily occur. As such, Cormican's statements about the automatic revocation of Cormican's operating privilege did not go beyond the information required by § 343.305(4), nor were those statements misleading. *See **Quelle***, 198 Wis. 2d at 280.

¶17 Cormican argues that these statements were misleading because the revocation of a person's operating privilege does not, in fact, occur automatically when a person refuses a requested test. Cormican cites WIS. STAT. § 343.305(9), which states that when a person refuses to take a requested test, "the law enforcement officer shall immediately prepare a notice of intent to revoke … the person's operating privilege." Sec. 343.305(9)(a). The notice must inform the person that he or she may request a refusal hearing. Sec. 343.305(9)(a)4. During that hearing, a court must determine whether the person improperly refused to take the requested test. Sec. 343.305(9)(c). If the court finds that the person did not improperly refuse to take the test, "the court shall order that no action be taken on

the operating privilege on account of the person's refusal to take the test in question."  Sec. 343.305(9)(d).

¶18    Cormican argues that Pollock's comments about the state automatically taking away his operating privilege were misleading because they "erroneously implied a summary nature of the revocation proceedings" and did not acknowledge Cormican's ability to request a refusal hearing.  As both the circuit court and Dunn County have correctly noted, however, WIS. STAT. § 343.305(4) does not require an officer to inform a person about his or her ability to request a refusal hearing.  Instead, under the statute, an officer is merely required to tell the person that "[i]f you refuse to take any test that this agency requests, *your operating privilege will be revoked* and you will be subject to other penalties."  Sec. 343.305(4) (emphasis added).  If we concluded that Pollock's statements regarding the automatic revocation of Cormican's operating privilege were misleading, then, logically, it would follow that § 343.305(4) is also misleading because it fails to inform a person that his or her operating privilege may not be revoked if the person requests, and prevails at, a refusal hearing.  Cormican does not develop any argument that § 343.305(4) is misleading or otherwise invalid.  Because Pollock's statements about the "automatic" revocation of Cormican's operating privilege were consistent with § 343.305(4), which must be read to an accused, we reject Cormican's argument that those statements were misleading.

¶19    Cormican also argues that Pollock exceeded his duty under WIS. STAT. § 343.305(4) by stating that Cormican had already consented to the requested blood test by virtue of obtaining a Wisconsin driver's license.  Dunn County concedes that this statement satisfies the first prong of the *Quelle* test because it went "beyond what [§ 343.305(4)] provides."  *See Quelle*, 198 Wis. 2d at 280.  Nevertheless, we agree with Dunn County that this statement was

9

not misleading under the second prong of the *Quelle* test and that the statement did not affect Cormican's decision to consent to a blood test under the third prong of the *Quelle* test. *See id.*

¶20 As noted above, the Implied Consent Law expressly provides that any person who drives or operates a motor vehicle on the public highways of this state "is deemed to have given consent to one or more tests of his or her breath, blood or urine." WIS. STAT. § 343.305(2). Thus, the Implied Consent Law "impose[s] a condition on the right to obtain a license to drive on a Wisconsin highway," and that condition "requires that a licensed driver, by applying for and receiving a license, consent to submit to chemical tests for intoxication under statutorily determined circumstances." *Scales v. State*, 64 Wis. 2d 485, 494, 219 N.W.2d 286 (1974); *see also* *Reitter*, 227 Wis. 2d at 225 ("The implied consent law provides that Wisconsin drivers are deemed to have given implied consent to chemical testing as a condition of receiving the operating privilege."). Here, Pollock told Cormican that "when you get your license, you're basically implying your consent to the state" to perform evidentiary chemical testing. That statement was consistent with *Scales* and *Reitter*, which were in effect at the time of the traffic stop.

¶21 After the traffic stop took place, our supreme court issued its decision in *State v. Prado*, 2021 WI 64, 397 Wis. 2d 719, 960 N.W.2d 869. The *Prado* court explained that there is a difference between consent "deemed" by statute, such as implied consent, and "actual consent." *See id.*, ¶44. The court concluded that "deemed" consent is not enough for a warrantless blood draw to satisfy the Fourth Amendment; instead, "actual" consent to the blood draw is required. *Id.*, ¶46. The court therefore held that the incapacitated driver provision of the Implied Consent Law—which allowed law enforcement to presume that an

10

incapacitated driver had not withdrawn his or her consent to an evidentiary chemical test—was unconstitutional because it allowed a test to be performed without a warrant based on deemed, rather than actual, consent. *Id.*, ¶¶3, 46, 54.

¶22 We agree with Dunn County that even after the supreme court's decision in *Prado*—which was not yet in effect at the time of the stop in this case—Pollock's statement about implied consent was not misleading. *Prado* held that a person's deemed or implied consent is insufficient to permit law enforcement to perform an evidentiary chemical test without a warrant; instead, the person's actual consent to the test is required. Here, Pollock stated that a person *implies* his or her consent to an evidentiary chemical test by obtaining a Wisconsin driver's license. That statement is accurate under Wisconsin law. Pollock never stated that a person gives *actual* consent to an evidentiary chemical test by obtaining a Wisconsin driver's license.

¶23 Moreover, despite referring to the concept of implied consent, Pollock made it clear that he needed Cormican to provide a "yes" or "no" answer regarding whether Cormican would consent to a blood test. If Cormican's implied consent, standing alone, were sufficient to permit law enforcement to perform a blood test, then there would have been no need for Pollock to ask Cormican whether he would, in fact, consent to such a test. The fact that Pollock asked for Cormican's consent to the blood test therefore would have communicated to Cormican that his implied consent—given at the time he received his Wisconsin driver's license—was insufficient by itself to permit law enforcement to perform a blood test.

¶24 Relatedly, under the third prong of the *Quelle* test, the record does not support a determination that Pollock's statement about implied consent

affected Cormican's decision to consent to the requested blood test. At the suppression hearing, Cormican testified that Pollock's statement about the Implied Consent Law led Cormican to believe "that [he] had already agreed to take the test by getting [his] driver's license," which made him feel "like [he] didn't really have a choice because [he] had a driver's license and [he] already gave that implied consent." On cross-examination, however, Cormican acknowledged that near the end of his discussion with Pollock, Pollock "explained that he needed a yes-or-no answer on the form." Cormican conceded that at that point, he "understood that [he] had a decision to make" about whether to consent to the blood test. This testimony shows that even after Pollock made his challenged statement about implied consent, Cormican understood that he could choose not to consent to the blood test. On this record, the circuit court found that Cormican had not shown that Pollock's statements "really affected his decision" to consent. The court's finding in that regard is not clearly erroneous.

¶25   In summary, although Cormican asserts that the results of his blood test should have been suppressed because Pollock exceeded his duty under Wis. Stat. § 343.305(4), none of Pollock's challenged statements satisfy all three prongs of the *Quelle* test. Accordingly, the circuit court properly determined that Cormican was not entitled to suppression on this basis.

**II.  Voluntariness of Cormican's consent**

¶26   Cormican also argues that suppression was warranted because his consent to the blood test was involuntary under the totality of the circumstances. Consent is voluntary when it is "an essentially free and unconstrained choice" and is not the product of duress or coercion. *State v. Blackman*, 2017 WI 77, ¶56, 377 Wis. 2d 339, 898 N.W.2d 774 (citation omitted). "The test for voluntariness is

whether consent to search was given in the 'absence of actual coercive improper police practices designed to overcome the resistance of a defendant.'" **State v. Hughes**, 2000 WI 24, ¶41, 233 Wis. 2d 280, 607 N.W.2d 621 (citation omitted). No single factor is dispositive in making this determination. **Id.** "Instead, we examine the totality of the circumstances, with special emphasis placed on the circumstances surrounding the consent and the characteristics of the defendant." **Id.**

¶27 Cormican asserts that his consent to the blood test was involuntary because, after reading him the ITA Form, Pollock "made the misleading claims that a refusal would automatically result in the state taking … Cormican's license away and that … Cormican had already given his consent to the chemical test simply by virtue of getting his Wisconsin driver's license." Cormican further asserts that Pollock "strategically contrasted" his claim that the State would automatically revoke Cormican's operating privilege with his subsequent statement that "there may be some penalties involved from positive test results." Cormican also cites Pollock's statements that a first-offense OWI would not necessarily be the "end of the road" with respect to Cormican's CDL and that Pollock knew individuals with first-offense OWIs who had not lost their CDLs. Finally, Cormican notes that after he consented to the blood test, Pollock stated, "I think, you know, in your situation it's probably the best way to go." Based on these statements, Cormican asserts that Pollock "encourag[ed], persuad[ed], and falsely incentiviz[ed] him to consent to a test."

¶28 We reject Cormican's argument that Pollock's statements rendered his consent to the blood test involuntary. We have already determined that Pollock's statements about implied consent and about the state automatically taking away Cormican's operating privilege were not misleading. In addition,

Pollock's statement that there "may be" penalties due to a positive test result was an accurate statement of what might occur if Cormican's blood tested positive for alcohol. Cormican provides no legal authority in support of the proposition that a law enforcement officer's accurate statements of the law can render a person's consent to a blood test involuntary.

¶29 As for Pollock's statement that he knew individuals with first-offense OWIs who had not lost their CDLs, there is nothing in the record to show that this statement was inaccurate or otherwise misleading. As Dunn County correctly notes, Pollock never promised Cormican that "his circumstances would end the same" as those other individuals, nor did Pollock state that a first-offense OWI would have "zero consequences" with respect to Cormican's CDL. Pollock did state that a first-offense OWI would not necessarily be the "end of the road" for Cormican's CDL, and we agree with Dunn County that "end of the road" is "a somewhat subjective phrase." In context, however, the most reasonable interpretation of that phrase is that a first-offense OWI would not necessarily result in the *permanent* loss of Cormican's CDL. By statute, a driver is permanently disqualified from operating a commercial motor vehicle after two OWI convictions, not one. *See* WIS. STAT. § 343.315(2)(c). Thus, Pollock's statement that a first-offense OWI would not necessarily be the "end of the road" for Cormican's CDL was not inaccurate.

¶30 Finally, while Cormican cites Pollock's statement that consenting to a blood test was "probably the best way to go," it is undisputed that Pollock made that statement after Cormican had already consented to the test. The statement is therefore irrelevant to our analysis of whether Cormican's consent was voluntary.

14

¶31    Ultimately, we conclude that none of the statements that Pollock made before Cormican consented to the blood test were inaccurate, misleading, or coercive. Furthermore, we observe that there is nothing in the record to suggest that Cormican's personal characteristics made him particularly susceptible to pressures imposed by law enforcement. *See Hughes*, 233 Wis. 2d 280, ¶41 (directing us to consider the defendant's personal characteristics in our voluntariness analysis). We therefore reject Cormican's argument that his consent to the blood test was involuntary under the totality of the circumstances.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.